David C. Kresin (No. 019858)
Thomas T. Griffin (No. 022475)
ROBAINA & KRESIN PLLC
5343 North 16th Street, Suite 200
Phoenix, Arizona 85016-3231
Telephone: (602) 682-6450
Facsimile: (602) 682-6455
dck@robainalaw.com
ttg@robainalaw.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Spindle, Inc., a Nevada corporation,<br><br>Plaintiff,<br>vs.<br><br>William Clark and Joann Clark, husband and wife; Sean Tate and Patricia La Due-Tate, husband and wife; Justin Clark, an individual; and Phasive, Inc., an Arizona Corporation,<br><br>Defendants. | **No. CV 16-02613 MHB**<br><br>**AMENDED ANSWER AND COUNTERCLAIM** |
| William Clark; Sean Tate; Justin Clark; and Phasive, Inc.,<br><br>Counterclaimants,<br>vs.<br><br>Spindle, Inc.,<br><br>Counterdefendant. | |

Defendants William Clark, Joann Clark, Justin Clark, Sean Tate, Patricia La Due-Tate and Phasive, Inc. for their Answer to the Complaint state as follows:

## NATURE OF ACTION

1. Defendants deny the allegations in Paragraph 1 of the Complaint. Defendants further aver that they complied with all legal and ethical obligations to Spindle, Inc. and have not damaged the company through wrongful acts or otherwise.

2. In response to Paragraph 2 of the Complaint, Defendants admit that Spindle, Inc. has requested injunctive relief and unspecified monetary damages in the Complaint, but denies that the company has sought any remedy pursuant to Fed. R. Civ. P. 65 and further denies that Defendants engaged in any wrongful or actionable conduct or that Spindle, Inc. is entitled to any relief under any of its claims.

## PARTIES, JURISDICTION, AND VENUE

3. In response to Paragraph 3 of the Complaint, Defendants admit that the Court has federal question jurisdiction, but deny that any of the asserted claims have merit.

4. In response to Paragraph 4 of the Complaint, Defendants admit the Court has supplemental jurisdiction, but deny that any of the asserted claims have merit.

5. In response to Paragraph 5 of the Complaint, Defendants admit that venue is proper in this district, but deny that Defendants engaged in any of the alleged wrongful or actionable conduct or that the conduct of Defendants gives rise to the claims asserted in the Complaint.

6. In response to Paragraph 6 of the Complaint, Defendants admit that Spindle, Inc. is a Nevada corporation with its principal place of business in Scottsdale, Arizona. In all other respects, Defendants deny the allegations in Paragraph 6 of the Complaint and further aver that shortly after Defendants left Spindle, Inc., the company voluntarily discontinued the unified commerce, location-based merchant discovery, and nearly all of the mobile payment and mobile couponing products including Yowza!! identified in Paragraph 6.

7. In response to Paragraph 7 of the Complaint, Defendants admit that William Clark ("W. Clark") is an individual residing in Arizona, that he served as

Spindle, Inc.'s Chief Executive Officer, and that his employment as CEO ended in June 2016. Defendants further aver that W. Clark did not become CEO of Spindle, Inc. until April 17, 2013. In all other respects, Defendants deny the allegations in Paragraph 7 of the Complaint.

8. Defendants admit the allegations in Paragraph 8 of the Complaint.

9. In response to Paragraph 9 of the Complaint, Defendants admit W. Clark acted on behalf of the Clarks' marital community when he was acting outside the scope of his employment. In all other respects, Defendants deny the allegations in Paragraph 9 of the Complaint and explicitly deny that W. Clark engaged in any wrongful or actionable conduct.

10. In response to Paragraph 10 of the Complaint, Defendants admit that Justin Clark ("J. Clark") is an individual residing in Arizona, that J. Clark is W. Clark's son, and that Spindle, Inc. employed J. Clark from approximately March 25, 2013 to June 2016 in a position managing the company's information technology. In all other respects, Defendants deny the allegations in Paragraph 10 of the Complaint and further aver that J. Clark was a co-founder of Spindle, Inc.

11. Defendants admit the allegations in Paragraph 11 of the Complaint.

12. Defendants admit the allegations in Paragraph 12 of the Complaint.

13. In response to Paragraph 13 of the Complaint, Defendants admit Sean Tate ("S. Tate") acted on behalf of the Tates' marital community when he was acting outside the scope of his employment. In all other respects, Defendants deny the allegations in Paragraph 13 of the Complaint and explicitly deny that S. Tate engaged in any wrongful or actionable conduct.

14. In response to Paragraph 14 of the Complaint, Defendants admit that Phasive, Inc. is an Arizona corporation with its principal place of business in Scottsdale, Arizona, that W. Clark and J. Clark created Phasive, Inc. on June 24, 2016. In all other respects, Defendants deny the allegations in Paragraph 14 of the Complaint. Defendants further aver that Defendants have not engaged in any competition with Spindle, Inc.

either during or after their employment; that Phasive, Inc. did not start operations until July 2016; and that to date, Phasive, Inc. has no products, no customers, and no revenue.

**FACTUAL ALLEGATIONS**

15. Defendants deny the allegations in Paragraph 15 of the Complaint.

16. In response to Paragraph 16 of the Complaint, Defendants admit that on about February 1, 2011, W. Clark entered into an Executive Employment Agreement with RhinoPay, Inc. and that agreement is attached as Exhibit 1 to the Complaint. In all other respects, Defendants deny the allegations in Paragraph 16 of the Complaint. Defendants further aver that Spindle, Inc. is not a party to Exhibit 1 and has no rights under Exhibit 1; Exhibit 1 was never assigned by RhinoPay, Inc. to Spindle Mobile, Inc. a predecessor to Spindle Inc, nor assigned to Spindle, Inc. or any other entity due to RhinoPay, Inc.'s prior material breach of the agreement; W. Clark was excused from performance under the agreement due to RhinoPay, Inc.'s prior material breach of not paying executive the required salary; Exhibit 1 was never assigned, extended or renewed and would have expired by its own terms on January 31, 2013; Exhibit 1 was never in effect while W. Clark was employed with Spindle, Inc. or Spindle Mobile, Inc.; and the parties' Transition Agreement discussed *infra* expressly superseded all prior agreements between the parties.

17. For the reasons stated in response to Paragraph 16 of the Complaint, Defendants deny the allegations in Paragraph 17 of the Complaint. Defendants further aver that W. Clark has not violated any legal obligations owed to Spindle, Inc.

18. For the reasons stated in response to Paragraph 16 of the Complaint, Defendants deny the allegations in Paragraph 18 of the Complaint. Defendants further aver that W. Clark has not violated any legal obligations owed to Spindle, Inc.

19. For the reasons stated in response to Paragraph 16 of the Complaint, Defendants deny the allegations in Paragraph 19 of the Complaint. Defendants further aver that W. Clark has not violated any legal obligations owed to Spindle, Inc.

20. For the reasons stated in response to Paragraph 16 of the Complaint, Defendants deny the allegations in Paragraph 20 of the Complaint. Defendants further aver that W. Clark has not violated any legal obligations owed to Spindle, Inc.

21. For the reasons stated in response to Paragraph 16 of the Complaint, Defendants deny the allegations in Paragraph 21 of the Complaint. Defendants further aver that W. Clark has not violated any legal obligations owed to Spindle, Inc.

22. For the reasons stated in response to Paragraph 16 of the Complaint, Defendants deny the allegations in Paragraph 22 of the Complaint. Defendants further aver that W. Clark has not violated any legal obligations owed to Spindle, Inc.

23. For the reasons stated in response to Paragraph 16 of the Complaint, Defendants deny the allegations in Paragraph 23 of the Complaint. Defendants further aver that W. Clark has not violated any legal obligations owed to Spindle, Inc.

24. Defendants admit the allegations of Paragraph 24 of the Complaint.

25. Defendants admit the allegations of Paragraph 25 of the Complaint.

26. In response to Paragraph 26 of the Complaint, Defendants admit that Exhibit 2 provided that all confidential information “exclusively belongs to the Company and not to the Employee” and that Exhibit 2 defined confidential information to include, among other things, Spindle, Inc.’s intellectual property. In all other respects, Defendants deny the allegations in Paragraph 26 of the Complaint and further aver that Tate has not violated any legal obligations owed to Spindle, Inc.

27. In response to Paragraph 27 of the Complaint, Defendants admit that Exhibit 2 prohibited Tate from disclosing, using or otherwise exploiting Spindle, Inc.’s Confidential Information (as that term was defined in Exhibit 2) for the benefit of any person or entity apart from Spindle, Inc. and that Tate agreed to deliver to Spindle, Inc. at any time during his term of employment or thereafter, all Spindle, Inc. Confidential Information in Tate’s possession or control. In all other respects, Defendants deny the allegations in Paragraph 27 of the Complaint and further aver that Tate has not violated any legal obligations owed to Spindle, Inc.

28. In response to Paragraph 28 of the Complaint, Defendants admit that Tate agreed not to solicit Spindle, Inc.'s employees and customers. In all other respects, Defendants deny the allegations in Paragraph 28 of the Complaint and further aver that the restrictive covenants contained in Exhibit 2 are unenforceable as a matter of Arizona law and, in any event, Tate has not violated any legal obligations owed to Spindle, Inc.

29. Defendants admit the allegations in Paragraph 29 of the Complaint, but further aver that Tate has performed all his legal obligations owed to Spindle, Inc.

30. Defendants admit the allegations in Paragraph 30 of the Complaint, but further aver that Tate has not violated any legal obligations owed to Spindle, Inc.

31. In response to Paragraph 31 of the Complaint, Defendants admit that Exhibit 3 contains the quoted language. Defendants further aver that Exhibit 3 was a document created to comply with a PCI Data Security audit; that the term "sensitive data" was specifically referring only to customer credit card data, account numbers and social security numbers; that the Yowza!! platform is not listed in Exhibit 3 as it contained no "sensitive data"; and that Tate has not violated any legal obligations owed to Spindle, Inc. In all other respects, Defendants deny the allegations in Paragraph 31 of the Complaint.

32. In response to Paragraph 32 of the Complaint, Defendants admit that Exhibit 3 contains the quoted language. Defendants further aver that Exhibit 3 was a document created to comply with a PCI Data Security audit; that the term "sensitive data" was specifically referring only to customer credit card data, account numbers and social security numbers; that the Yowza!! platform is not listed in Exhibit 3 as it contained no "sensitive data"; and that Tate has not violated any legal obligations owed to Spindle, Inc. In all other respects, Defendants deny the allegations in Paragraph 32 of the Complaint.

33. In response to Paragraph 33 of the Complaint, Defendants admit that Exhibit 3 contains the quoted language. Defendants further aver that Exhibit 3 was a document created to comply with a PCI Data Security audit; that the term "sensitive

data" was specifically referring only to customer credit card data, account numbers and social security numbers; that the Yowza!! platform is not listed in Exhibit 3 as it contained no "sensitive data"; and that Tate has not violated any legal obligations owed to Spindle, Inc. In all other respects, Defendants deny the allegations in Paragraph 33 of the Complaint.

34. In response to Paragraph 34 of the Complaint, Defendants admit that Exhibit 3 contains the quoted language. Defendants further aver that Exhibit 3 was a document created to comply with a PCI Data Security audit; that the term "sensitive data" was specifically referring only to customer credit card data, account numbers and social security numbers; that the Yowza!! platform is not listed in Exhibit 3 as it contained no "sensitive data"; and that Tate has not violated any legal obligations owed to Spindle, Inc. In all other respects, Defendants deny the allegations in Paragraph 34 of the Complaint.

35. In response to Paragraph 35 of the Complaint, Defendants admit that Exhibit 3 contains the quoted language. Defendants further aver that Exhibit 3 was a document created to comply with a PCI Data Security audit; that the term "sensitive data" was specifically referring only to customer credit card data, account numbers and social security numbers; that the Yowza!! platform is not listed in Exhibit 3 as it contained no "sensitive data"; and that Tate has not violated any legal obligations owed to Spindle, Inc. In all other respects, Defendants deny the allegations in Paragraph 35 of the Complaint.

36. Defendants deny the allegations in Paragraph 36 of the Complaint.

37. In response to Paragraph 37 of the Complaint, Defendants admit that J. Clark was employed by Spindle, Inc. in a vice president position. Defendants further aver that J. Clark was employed as a Spindle, Inc. vice president from approximately March 25, 2013 to June 2016. In all other respects, Defendants deny the allegations in Paragraph 37 of the Complaint.

38. Defendants admit the allegations in Paragraph 38 of the Complaint, but further aver that Exhibit 4 was a document created to comply with a PCI Data Security audit; that the term "sensitive data" was specifically referring only to customer credit card data, account numbers and social security numbers; that the Yowza!! platform is not listed in Exhibit 4 as it contained no "sensitive data"; and that J. Clark has not violated any legal obligations owed to Spindle, Inc. In all other respects, Defendants deny the allegations in Paragraph 38 of the Complaint.

39. In response to Paragraph 39 of the Complaint, Defendants admit that Exhibit 4 contains the quoted language. Defendants further aver that Exhibit 4 was a document created to comply with a PCI Data Security audit; that the term "sensitive data" was specifically referring only to customer credit card data, account numbers and social security numbers; that the Yowza!! platform is not listed in Exhibit 4 as it contained no "sensitive data"; and that J. Clark has not violated any legal obligations owed to Spindle, Inc. In all other respects, Defendants deny the allegations in Paragraph 39 of the Complaint.

40. In response to Paragraph 40 of the Complaint, Defendants admit that Exhibit 4 contains the quoted language. Defendants further aver that Exhibit 4 was a document created to comply with a PCI Data Security audit; that the term "sensitive data" was specifically referring only to customer credit card data, account numbers and social security numbers; that the Yowza!! platform is not listed in Exhibit 4 as it contained no "sensitive data"; and that J. Clark has not violated any legal obligations owed to Spindle, Inc. In all other respects, Defendants deny the allegations in Paragraph 40 of the Complaint.

41. In response to Paragraph 41 of the Complaint, Defendants admit that Exhibit 4 contains the quoted language. Defendants further aver that Exhibit 4 was a document created to comply with a PCI Data Security audit; that the term "sensitive data" was specifically referring only to customer credit card data, account numbers and social security numbers; that the Yowza!! platform is not listed in Exhibit 4 as it

contained no "sensitive data"; and that J. Clark has not violated any legal obligations owed to Spindle, Inc. In all other respects, Defendants deny the allegations in Paragraph 41 of the Complaint.

42. In response to Paragraph 42 of the Complaint, Defendants admit that Exhibit 4 contains the quoted language. Defendants further aver that Exhibit 4 was a document created to comply with a PCI Data Security audit; that the term "sensitive data" was specifically referring only to customer credit card data, account numbers and social security numbers; that the Yowza!! platform is not listed in Exhibit 4 as it contained no "sensitive data"; and that J. Clark has not violated any legal obligations owed to Spindle, Inc. In all other respects, Defendants deny the allegations in Paragraph 42 of the Complaint.

43. In response to Paragraph 43 of the Complaint, Defendants admit that Exhibit 4 contains the quoted language. Defendants further aver that Exhibit 4 was a document created to comply with a PCI Data Security audit; that the term "sensitive data" was specifically referring only to customer credit card data, account numbers and social security numbers; that the Yowza!! platform is not listed in Exhibit 4 as it contained no "sensitive data"; and that J. Clark has not violated any legal obligations owed to Spindle, Inc. In all other respects, Defendants deny the allegations in Paragraph 43 of the Complaint.

44. Defendants admit the allegations in Paragraph 44 of the Complaint, but further aver that the acquisition of Yowza!! was not done to gain the technology present in the mobile app, but for the brand itself; Yowza!! content was intended to be incorporated into the MeNetwork platform; that shortly after the completion of acquisition Spindle initiated a project to migrate Yowza!! content to the MeNetwork platform; and that at the time of acquisition, 100% of the value was the brand, not the technology.

45. Defendants admit the allegations in Paragraph 45 of the Complaint.

46. Defendants deny the allegations in Paragraph 46 of the Complaint.

47. In response to Paragraph 47 of the Complaint, Defendants admit that for a limited time while they were employees of Spindle, Inc., W. Clark tasked Tate and J. Clark with developing the software code that operates Yowza!! and Tate and J. Clark developed the software code. In all other respects, Defendants deny the allegations in Paragraph 47 of the Complaint and further aver that those tasks were not assigned exclusively to J. Clark and Tate; that much of the code of the Yowza!! platform that Tate and J. Clark developed was based on open source software; that there exists nothing in Yowza!! that any developer could not immediately reproduce with a basic understanding of “coupon apps”; and that there currently exist many other competitive coupon apps in the app store.

48. In response to Paragraph 48 of the Complaint, Defendants admit that Spindle, Inc. invested time and money developing and launching Yowza!! in its current form. In all other respects, Defendants deny the allegations of Paragraph 48 of the Complaint.

49. Defendants deny the allegations in Paragraph 49 of the Complaint.

50. Defendants deny the allegations in Paragraph 50 of the Complaint, and further aver that the entire value of Yowza!! is the brand, not the technology; that much of the code of the Yowza!! platform that Tate and J. Clark developed was based on open source software; and that there exists nothing in Yowza!! that any developer could not immediately reproduce with a basic understanding of “coupon apps.”

51. Defendants deny the allegations in Paragraph 51 of the Complaint.

52. Defendants deny the allegations in Paragraph 52 of the Complaint.

53. Defendants admit the allegations in Paragraph 53 of the Complaint.

54. In response to Paragraph 54, Defendants admit that one board member Tony VanBrackle voiced such an opinion, but aver that W. Clark was reassured by the other three board members verbally and in email that they had full trust and confidence in his ongoing leadership ability. In all other respects, Defendants lack sufficient

knowledge and information as to the truth of the allegations in Paragraph 54 and therefore deny the same.

55. Defendants deny the allegations in Paragraph 55 of the Complaint, and further aver that the ongoing investment in Yowza!! was not substantial; that at the direction of the board only a small portion of the company's resources were focused on Yowza!! related development activities; and that the application was fully functional as designed.

56. Defendants admit the allegations in Paragraph 56 of the Complaint.

57. Defendants deny the allegations in Paragraph 57 of the Complaint, and further aver that the payment platform operated as designed for three years, served thousands of merchants, and was resold by over 20 channel partners.

58. Defendants admit the allegations in Paragraph 58 of the Complaint.

59. In response to Paragraph 59 of the Complaint, Defendants admit that at all times during his tenure as CEO, W. Clark knew fully the financial position of Spindle, Inc. and represented affirmatively to the Board of Directors and investors that he believed Spindle would begin to generate revenue by January 2016. In all other respects, Defendants deny the allegations in Paragraph 59 of the Complaint and further aver that the Board were fully apprised on a regular basis regarding the pipeline, sales efforts, and the reason for delay in revenue; that W. Clark relied on board members Mr. VanBrackle and Dr. Jack Scott, who were contracted by the company to manage sales and forecast revenues and cashflow; that W. Clark and other board members personally supplied the necessary investment capital to fund the company during the initial months of 2016; and that Spindle did in fact generate revenue by January 2016, as reported on the company's Dec 31, 2015 10-K filing with the SEC.

60. Defendants deny the allegations in Paragraph 60 of the Complaint.

61. In response to Paragraph 61 of the Complaint, Defendants admit that in August 2015, Spindle, Inc. acquired Catalyst Business Development Inc. ("Catalyst"), a Scottsdale, Arizona-based provider of payment gateway services, sales and software

solutions; that Catalyst brought with it a sales pipeline of opportunities and relationships and an ability to process business not previously held by Spindle; and that W. Clark articulated his belief that Catalyst would be accretive to Spindle, Inc. In all other respects, Defendant denies the allegations in Paragraph 61 of the Complaint.

62. Defendants deny the allegations in Paragraph 62 of the Complaint, and further aver that W. Clark obtained the numbers and projections from board members Mr. VanBrackle, who was contractually responsible for negotiating the Catalyst acquisition and managing the referral contracts pipeline with Antone Biondo, and Dr. Scott, who was contractually responsible for documenting the sales projections, forecasting revenue, and establishing cash follow projections.

63. Defendants deny the allegations in Paragraph 63 of the Complaint, and further aver that the statements made by W. Clark in the May 2016 shareholder letter were made in reliance on board member Dr. Jack Scott, who provided revenue, expense, and cash flow forecasts for the letter and approved the contents of the letter, and interim CFO John Devlin, who had responsibility to monitor the company performance and forecast and never voiced any concern with the numbers reported in the letter; and that based on the 10-Q filing for the period ending June 30, 2016, W. Clark's statements regarding the anticipated revenue proved substantially accurate.

64. Defendants deny the allegations in Paragraph 64 of the Complaint, and further aver that these high risk clients were generating recurring revenue and had a long history with Spindle; that the industry shift in risk tolerance due to the introduction of EMV contributed to their reduction in processing volume with Spindle; and that the board was apprised of the circumstances as they unfolded.

65. In response to Paragraph 65 of the Complaint, Defendants admit that Spindle, Inc. sought to obtain a client named C&H Pharma. In all other respects, Defendants deny the allegations in Paragraph 65 of the Complaint.

66. Defendants deny the allegations in Paragraph 66 of the Complaint.

67. In response to Paragraph 67 of the Complaint, Defendants admit that the quoted language was included in the May 17, 2016 letter to the shareholders. Defendants lack sufficient knowledge and information to form a belief as to the trust of the allegation that W. Clark presented a documents “2016 Project Launches” to the Board on January 21, 2016, and therefore deny that allegation. In all other respects, Defendants deny the allegations in Paragraph 67 of the Complaint and further aver that all statements made in the May 2016 letter to shareholders and to the board by W. Clark related to the financial condition of Spindle, Inc. were made in reliance on information provided by Mr. VanBrackle and Dr. Scott, who were managing sales and developing the revenue and expense plan; that the Jun 30, 2016 10-Q quarterly report filed with the SEC shows a 19.5% increase over the first quarter, thus supporting the statement that revenue will continue to increase; and that just before W. Clark’s termination, Interim CEO Schwartz communicated to W. Clark that the pipeline in fact was robust and quoted a revenue number higher than the plan number.

68. Defendants deny the allegations in Paragraph 68 of the Complaint.

69. Defendants deny the allegations in Paragraph 69 of the Complaint and further aver that W. Clark converted no debt in May and that he never converted debt to stock at market price.

70. In response to Paragraph 70 of the Complaint, Defendants deny that W. Clark engaged in any breaches of his fiduciary duties as CEO. In all other respects, Defendants lack knowledge and information sufficient to form a belief as to the allegations in Paragraph 70 of the Complaint, and therefore deny the allegations.

71. Defendants deny the allegations in Paragraph 71 of the Complaint.

72. Defendants deny the allegations in Paragraph 72 of the Complaint.

73. In response to Paragraph 73 of the Complaint, Defendants admit that after Spindle, Inc. notified W. Clark of his termination as CEO, W. Clark was asked to support Spindle, Inc. through a transition period and that W. Clark refused to support a transition unless he was compensated, including payment of 1 million shares of Spindle,

Inc. stock. Defendants further aver that the company compensation committee had previously approved, and communicated in official board records, a 1 million share stock incentive upon certain conditions that should have already been met but for the contrary acts of the Board of Directors. In all other respects, Defendants deny the allegations in Paragraph 73 of the Complaint.

74. In response to Paragraph 74 of the Complaint, Defendants admit that Spindle, Inc. offered W. Clark certain consideration in exchange for his agreement to engaged in certain conduct that would help facilitate the transition of leadership at Spindle, Inc. In all other respects, Defendants deny the allegations in Paragraph 74 of the Complaint.

75. Defendants admit the allegations in Paragraph 75 of the Complaint, and further aver that the letter was sent at the request of the Board of Directors.

76. In response to Paragraph 76 of the Complaint, Defendants admit that on or about June 13, 20116, Spindle, Inc. and W. Clark entered into a Transition Agreement, which is attached as Exhibit 5. In all other respects, Defendants deny the allegations in Paragraph 76 of the Complaint and further aver that the stated purpose of the Transition Agreement was to specify the obligations of the Parties following W. Clark's termination from CEO of Spindle, Inc. and that W. Clark has not violated any legal obligations owed to Spindle, Inc.

77. In response to Paragraph 77 of the Complaint, Defendants admit that Exhibit 5 prohibited W. Clark from revealing, disclosing, selling or using any of Spindle, Inc.'s Confidential Information under certain conditions and that the term Confidential Information expressly included proprietary software. In all other respects, Defendants deny the allegations in Paragraph 77 of the Complaint and further aver that W. Clark has not violated any legal obligations owed to Spindle, Inc.

78. Defendants admit the allegations in Paragraph 78 of the Complaint.

79. Defendants admit the allegations in Paragraph 79 of the Complaint and further aver that W. Clark has not violated any legal obligations owed to Spindle, Inc.

80. Defendants admit the allegations of Paragraph 80 of the Complaint and further aver that W. Clark has not violated any legal obligations owed to Spindle, Inc.

81. Defendants admit the allegations of Paragraph 81 of the Complaint and further aver that W. Clark has not violated any legal obligations owed to Spindle, Inc.

82. In response to Paragraph 82 of the Complaint, Defendants admit that the Transition Agreement provided that W. Clark would receive certain number of shares of stock, including a certain number of shares to be received at the execution of the agreement, and further aver that the transfer was completed and confirmed as approved, authorized, and disclosed in the company's June 30, 2016 10-Q filing with the SEC; that the agreement did specify that certain additional shares would be transferred in exchange for his complete transfer of information and property related to certain topics specified at the completion of the transition period; and that W. Clark has not violated any legal obligations owed to Spindle, Inc. In all other respects, Defendants deny the allegations in Paragraph 82 of the Complaint.

83. Defendants admit the allegations in Paragraph 83 of the Complaint and further aver that W. Clark has not violated any legal obligations owed to Spindle, Inc.

84. Defendants deny the allegations in Paragraph 84 of the Complaint and further aver that W. Clark has not violated any legal obligations owed to Spindle, Inc. and that there are no agreements other than the Transition Agreement that were in effect after June 13, 2016.

85. In response to Paragraph 85 of the Complaint, Defendant admits that on June 24, 2016, W. Clark and J. Clark incorporated Phasive, Inc. in Arizona. In all other respects, Defendants deny the allegations in Paragraph 85 of the Complaint and further aver that Defendants have not engaged in any competition with Spindle, Inc. either during or after their employment; that Phasive, Inc. did not start operations until July 2016; and that to date, Phasive, Inc. has no products, no customers, and no revenue.

86. Defendants admit the allegations in Paragraph 86 of the Complaint, but further aver that no discussions occurred until after W. Clark had resigned his employment and J. Clark had notified Spindle, Inc. of his resignation.

87. Defendants deny the allegations in Paragraph 87 of the Complaint.

88. Defendants deny the allegations in Paragraph 88 of the Complaint.

89. In response to Paragraph 89 of the Complaint, Defendants admit that Tate and J. Clark were important Spindle employees. In all other respects, Defendants deny the allegations in Paragraph 89 of the Complaint and further aver that Spindle, Inc. terminated S. Tate when he had no intention of leaving the company.

90. In response to Paragraph 90 of the Complaint, Defendants admit that W. Clark, J. Clark and Tate were present for a conference call in one of Spindle, Inc.'s conference rooms during June 2016, and further aver that employees were permitted to use the company conference room for personal use. In all other respects, Defendants deny the allegations in Paragraph 90 of the Complaint.

91. In response to Paragraph 91 of the Complaint, Defendants admit that Spindle, Inc. terminated its relationship with W. Clark, J. Clark and Tate and escorted them out of the office building shortly after the conference call described in response to Paragraph 90 above. In all other respects, Defendants deny the allegations in Paragraph 91 of the Complaint and specifically deny that the conference call was with a potential investor.

92. Defendants deny the allegations in Paragraph 92 of the Complaint.

93. Defendants deny the allegations in Paragraph 93 of the Complaint.

94. Defendants deny the allegations in Paragraph 94 of the Complaint.

95. Defendants deny the allegations in Paragraph 95 of the Complaint.

96. In response to Paragraph 96 of the Complaint, Defendants admit that wiping data off of company computers occurred and further aver that such wiping of data occurred at least monthly in compliance with PCI standards. In all other respects, Defendants deny the allegations in Paragraph 96 of the Complaint.

97. In response to Paragraph 97 of the Complaint, Defendants admit that on July 1, 2016, Phasive, Inc. posted a LinkedIn page and a coming soon website with the tagline "Building the next generation Consumer Engagement platform", and further aver that the website included no detail that would indicate Phasive was delivering a consumer app or competing with Spindle. In all other respects, Defendants deny the allegations in Paragraph 97 of the Complaint.

98. Defendants deny the allegations in Paragraph 98 of the Complaint.

99. Defendants deny the allegations in Paragraph 99 of the Complaint.

100. Defendants deny the allegations in Paragraph 100 of the Complaint.

101. Defendants deny the allegations in Paragraph 101 of the Complaint and further aver that Spindle, Inc. specifically authorized the issuance and transfer of the stock to W. Clark through its approval of the Transition Agreement requiring such transfer and that fact is confirmed by the statements in the June 30, 2016 10-Q filing with the SEC that establish that the "Company authorized and issued 500,000 shares of its common stock to our former CEO as part of his transition agreement."

## FIRST CLAIM FOR RELIEF

### (Breach of Contract – Against W. Clark)

102. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

103. In response to Paragraph 103 of the Complaint, Defendants admit that Spindle, Inc. and W. Clark entered into a valid written contract with respect to the Transition Agreement and otherwise operated under a valid employment contract during his employment. Defendants deny that Spindle, Inc. and W. Clark entered into the written employment contract attached as Exhibit 1 to the Complaint and in all other respects, deny the allegations in Paragraph 103 of the Complaint.

104. Defendants deny the allegations of Paragraph 104 of the Complaint.

105. Defendants deny the allegations of Paragraph 105 of the Complaint.

106. Defendants deny the allegations of Paragraph 106 of the Complaint.

**SECOND CLAIM FOR RELIEF**

**(Breach of Contract – Against J. Clark)**

107. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

108. Defendants admit the allegations in Paragraph 108 of the Complaint, but deny that there was any written employment contract between Spindle, Inc. and J. Clark.

109. Defendants deny the allegations of Paragraph 109 of the Complaint.

110. Defendants deny the allegations of Paragraph 110 of the Complaint.

111. Defendants deny the allegations of Paragraph 111 of the Complaint.

**THIRD CLAIM FOR RELIEF**

**(Breach of Contract – Against Tate)**

112. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

113. Defendants admit the allegations in Paragraph 113 of the Complaint.

114. Defendants deny the allegations of Paragraph 114 of the Complaint.

115. Defendants deny the allegations of Paragraph 115 of the Complaint.

116. Defendants deny the allegations of Paragraph 116 of the Complaint.

**FOURTH CLAIM FOR RELIEF**

**(Breach of Fiduciary Duty – Against W. Clark)**

117. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

118. Defendants admit the allegations in Paragraph 118 of the Complaint.

119. Defendants deny the allegations of Paragraph 119 of the Complaint.

120. Defendants deny the allegations of Paragraph 120 of the Complaint.

**FIFTH CLAIM FOR RELIEF**

**(Breach of Fiduciary Duty – Against J. Clark)**

121. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

122. Defendants admit the allegations in Paragraph 122 of the Complaint.

123. Defendants deny the allegations of Paragraph 123 of the Complaint.

124. Defendants deny the allegations of Paragraph 124 of the Complaint.

**SIXTH CLAIM FOR RELIEF**

**(Breach of Fiduciary Duty – Against Tate)**

125. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

126. Defendants admit the allegations in Paragraph 126 of the Complaint.

127. Defendants deny the allegations of Paragraph 127 of the Complaint.

128. Defendants deny the allegations of Paragraph 128 of the Complaint.

129. Defendants deny the allegations of Paragraph 129 of the Complaint.

**SEVENTH CLAIM FOR RELIEF**

**(Unfair Competition – Against W. Clark)**

130. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

131. Defendants admit the allegations in Paragraph 131 of the Complaint.

132. Defendants deny the allegations of Paragraph 132 of the Complaint.

133. Defendants deny the allegations of Paragraph 133 of the Complaint.

134. Defendants deny the allegations of Paragraph 134 of the Complaint.

135. Defendants deny the allegations of Paragraph 135 of the Complaint.

**EIGHTH CLAIM FOR RELIEF**

**(Unfair Competition – Against J. Clark)**

136. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

137. Defendants admit the allegations in Paragraph 137 of the Complaint.

138. Defendants deny the allegations of Paragraph 138 of the Complaint.

139. Defendants deny the allegations of Paragraph 139 of the Complaint.

140. Defendants deny the allegations of Paragraph 140 of the Complaint.

141. Defendants deny the allegations of Paragraph 141 of the Complaint.

**NINTH CLAIM FOR RELIEF**

**(Unfair Competition – Against Tate)**

142. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

143. Defendants admit the allegations in Paragraph 143 of the Complaint.

144. Defendants deny the allegations of Paragraph 144 of the Complaint.

145. Defendants deny the allegations of Paragraph 145 of the Complaint.

146. Defendants deny the allegations of Paragraph 146 of the Complaint.

147. Defendants deny the allegations of Paragraph 147 of the Complaint.

**TENTH CLAIM FOR RELIEF**

**(Unfair Competition – Against Phasive)**

148. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

149. Defendants admit the allegations in Paragraph 149 of the Complaint.

150. Defendants deny the allegations of Paragraph 150 of the Complaint.

151. Defendants deny the allegations of Paragraph 151 of the Complaint.

152. Defendants deny the allegations of Paragraph 152 of the Complaint.

153. Defendants deny the allegations of Paragraph 153 of the Complaint.

**ELEVENTH CLAIM FOR RELIEF**

**(Misappropriation of Trade Secrets under the Defend Trade Secrets Act and the Arizona Trade Secrets Act – Against W. Clark)**

154. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

155. Defendants deny the allegations in Paragraph 155 of the Complaint.

156. Defendants deny the allegations of Paragraph 156 of the Complaint.

157. Defendants deny the allegations of Paragraph 157 of the Complaint.

158. Defendants deny the allegations of Paragraph 158 of the Complaint.

17a. Defendants deny the allegations of second Paragraph 17 on page 21 of the Complaint.

**TWELFTH CLAIM FOR RELIEF**

**(Misappropriation of Trade Secrets under the Defend Trade Secrets Act and the Arizona Trade Secrets Act – Against J. Clark)**

159. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

160. Defendants deny the allegations in Paragraph 160 of the Complaint.

161. Defendants deny the allegations of Paragraph 161 of the Complaint.

162. Defendants deny the allegations of Paragraph 162 of the Complaint.

163. Defendants deny the allegations of Paragraph 163 of the Complaint.

164. Defendants deny the allegations of Paragraph 164 of the Complaint.

**THIRTEENTH CLAIM FOR RELIEF**

**(Misappropriation of Trade Secrets under the Defend Trade Secrets Act And the Arizona Trade Secrets Act – Against Tate)**

165. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

166. Defendants deny the allegations in Paragraph 166 of the Complaint.

167. Defendants deny the allegations of Paragraph 167 of the Complaint.

168. Defendants deny the allegations of Paragraph 168 of the Complaint.

169. Defendants deny the allegations of Paragraph 169 of the Complaint.

170. Defendants deny the allegations of Paragraph 170 of the Complaint.

**FOURTEENTH CLAIM FOR RELIEF**

**(Misappropriation of Trade Secrets under the Defend Trade Secrets Act And the Arizona Trade Secrets Act – Against Phasive)**

171. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

172. Defendants deny the allegations in Paragraph 172 of the Complaint.

173. Defendants deny the allegations of Paragraph 173 of the Complaint.

174. Defendants deny the allegations of Paragraph 174 of the Complaint.

175. Defendants deny the allegations of Paragraph 175 of the Complaint.

## FIFTEENTH CLAIM FOR RELIEF

**(Tortious Interference with Contractual Relations – Against W. Clark)**

176. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

177. Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 177 of the Complaint, and therefore deny the allegations.

178. In response to Paragraph 178, Defendants admit that W. Clark knew of then-existing contractual relationships during his employment. In all other respects, Defendants deny the allegations of Paragraph 178 of the Complaint.

179. Defendants deny the allegations of Paragraph 179 of the Complaint.

180. Defendants deny the allegations of Paragraph 180 of the Complaint.

181. Defendants deny the allegations of Paragraph 181 of the Complaint.

## SIXTEENTH CLAIM FOR RELIEF

**(Tortious Interference with Contractual Relations – Against J. Clark)**

182. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

183. Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 183 of the Complaint, and therefore deny the allegations.

184. Defendants deny the allegations of Paragraph 184 of the Complaint.

185. Defendants deny the allegations of Paragraph 185 of the Complaint.

186. Defendants deny the allegations of Paragraph 186 of the Complaint.

187. Defendants deny the allegations of Paragraph 187 of the Complaint.

**SEVENTEENTH CLAIM FOR RELIEF**

**(Tortious Interference with Contractual Relations – Against Phasive)**

188. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

189. Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 189 of the Complaint, and therefore deny the allegations.

190. Defendants deny the allegations of Paragraph 190 of the Complaint.

191. Defendants deny the allegations of Paragraph 191 of the Complaint.

192. Defendants deny the allegations of Paragraph 192 of the Complaint.

193. Defendants deny the allegations of Paragraph 193 of the Complaint.

**EIGHTEENTH CLAIM FOR RELIEF**

**(Tortious Interference with Contractual Relations – Against Tate)**

194. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

195. Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 195 of the Complaint, and therefore deny the allegations.

196. Defendants deny the allegations of Paragraph 196 of the Complaint.

197. Defendants deny the allegations of Paragraph 197 of the Complaint.

198. Defendants deny the allegations of Paragraph 198 of the Complaint.

199. Defendants deny the allegations of Paragraph 199 of the Complaint.

**NINETEENTH CLAIM FOR RELIEF**

**(Tortious Interference with Prospective Economic Advantage – Against W. Clark)**

200. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

201. Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 201 of the Complaint, and therefore deny the allegations.

202. In response to Paragraph 202, Defendants admit that W. Clark knew of then-existing prospective contractual relationships during his employment. In all other respects, Defendants deny the allegations of Paragraph 202 of the Complaint.

203. Defendants deny the allegations of Paragraph 203 of the Complaint.

204. Defendants deny the allegations of Paragraph 204 of the Complaint.

205. Defendants deny the allegations of Paragraph 205 of the Complaint.

## TWENTIETH CLAIM FOR RELIEF

**(Tortious Interference with Prospective Economic Advantage – Against J. Clark)**

206. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

207. Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 201 of the Complaint, and therefore deny the allegations.

208. Defendants deny the allegations of Paragraph 208 of the Complaint.

209. Defendants deny the allegations of Paragraph 209 of the Complaint.

210. Defendants deny the allegations of Paragraph 210 of the Complaint.

211. Defendants deny the allegations of Paragraph 211 of the Complaint.

## TWENTY-FIRST CLAIM FOR RELIEF

**(Tortious Interference with Prospective Economic Advantage – Against Tate)**

212. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

213. Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 213 of the Complaint, and therefore deny the allegations.

214. Defendants deny the allegations of Paragraph 214 of the Complaint.

215. Defendants deny the allegations of Paragraph 215 of the Complaint.

216. Defendants deny the allegations of Paragraph 216 of the Complaint.

217. Defendants deny the allegations of Paragraph 217 of the Complaint.

**TWENTY-SECOND CLAIM FOR RELIEF**

**(Tortious Interference with Prospective Economic Advantage – Against Phasive)**

218. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

219. Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 219 of the Complaint, and therefore deny the allegations.

220. Defendants deny the allegations of Paragraph 220 of the Complaint.

221. Defendants deny the allegations of Paragraph 221 of the Complaint.

222. Defendants deny the allegations of Paragraph 222 of the Complaint.

223. Defendants deny the allegations of Paragraph 223 of the Complaint.

**TWENTY-THIRD CLAIM FOR RELIEF**

**(Defamation – Against W. Clark)**

224. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

225. Defendants deny the allegations in Paragraph 225 of the Complaint.

226. Defendants deny the allegations of Paragraph 226 of the Complaint.

227. Defendants deny the allegations of Paragraph 227 of the Complaint.

228. Defendants deny the allegations of Paragraph 228 of the Complaint.

**TWENTY-FOURTH CLAIM FOR RELIEF**

**(Defamation – Against J. Clark)**

229. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

230. Defendants deny the allegations in Paragraph 230 of the Complaint.

231. Defendants deny the allegations of Paragraph 231 of the Complaint.

232. Defendants deny the allegations of Paragraph 232 of the Complaint.

233. Defendants deny the allegations of Paragraph 233 of the Complaint.

**TWENTY-FIFTH CLAIM FOR RELIEF**

**(Defamation – Against Tate)**

234. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

235. Defendants deny the allegations in Paragraph 235 of the Complaint.

236. Defendants deny the allegations of Paragraph 236 of the Complaint.

237. Defendants deny the allegations of Paragraph 237 of the Complaint.

238. Defendants deny the allegations of Paragraph 238 of the Complaint.

**TWENTY-SIXTH CLAIM FOR RELIEF**

**(Defamation – Against Phasive)**

239. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

240. Defendants deny the allegations in Paragraph 240 of the Complaint.

241. Defendants deny the allegations of Paragraph 241 of the Complaint.

242. Defendants deny the allegations of Paragraph 242 of the Complaint.

243. Defendants deny the allegations of Paragraph 243 of the Complaint.

**TWENTY-SEVENTH CLAIM FOR RELIEF**

**(Conspiracy – Against All Defendants)**

244. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

245. Defendants deny the allegations in Paragraph 245 of the Complaint.

246. Defendants deny the allegations of Paragraph 246 of the Complaint.

247. Defendants deny the allegations of Paragraph 247 of the Complaint.

248. Defendants deny the allegations of Paragraph 248 of the Complaint.

**TWENTY-EIGHTH CLAIM FOR RELIEF**

**(Concert of Action – Against All Defendants)**

249. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

250. Defendants deny the allegations in Paragraph 250 of the Complaint.

251. Defendants deny the allegations of Paragraph 251 of the Complaint.

252. Defendants deny the allegations of Paragraph 252 of the Complaint.

253. Defendants deny the allegations of Paragraph 253 of the Complaint.

254. Defendants deny the allegations of Paragraph 254 of the Complaint.

**TWENTY-NINTH CLAIM FOR RELIEF**

**(Breach of Duty of Loyalty – Against W. Clark)**

255. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

256. In response to Paragraph 256 of the Complaint, Defendants admit that W. Clark was an agent until June 9, 2016. In all other respects, Defendants deny the allegations in Paragraph 256 of the Complaint.

257. Defendants deny the allegations of Paragraph 257 of the Complaint.

258. Defendants deny the allegations of Paragraph 258 of the Complaint.

259. Defendants deny the allegations of Paragraph 259 of the Complaint.

**THIRTIETH CLAIM FOR RELIEF**

**(Breach of Duty of Loyalty – Against J. Clark)**

260. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

261. In response to Paragraph 261 of the Complaint, Defendants admit that J. Clark was an agent until June 30, 2016. In all other respects, Defendants deny the allegations in Paragraph 261 of the Complaint.

262. Defendants deny the allegations of Paragraph 262 of the Complaint.

263. Defendants deny the allegations of Paragraph 263 of the Complaint.

264. Defendants deny the allegations of Paragraph 264 of the Complaint.

**<u>THIRTY-FIRST CLAIM FOR RELIEF</u>**

**(Breach of Duty of Loyalty – Against Tate)**

265. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

266. In response to Paragraph 266 of the Complaint, Defendants admit that S. Tate was an agent until June 30, 2016. In all other respects, Defendants deny the allegations in Paragraph 266 of the Complaint.

267. Defendants deny the allegations of Paragraph 267 of the Complaint.

268. Defendants deny the allegations of Paragraph 268 of the Complaint.

269. Defendants deny the allegations of Paragraph 269 of the Complaint.

**<u>THIRTY-SECOND CLAIM FOR RELIEF</u>**

**(Conversion – Against All Defendants)**

270. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

271. Defendants deny the allegations in Paragraph 271 of the Complaint.

272. Defendants deny the allegations of Paragraph 272 of the Complaint.

273. Defendants deny the allegations of Paragraph 273 of the Complaint.

**<u>THIRTY-THIRD CLAIM FOR RELIEF</u>**

**(Breach of Implied Covenant of Good Faith and Fair Dealing – Against W. Clark)**

274. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

275. Defendants admit the allegations in Paragraph 275 of the Complaint.

276. Defendants admit the allegations of Paragraph 276 of the Complaint.

277. Defendants deny the allegations of Paragraph 277 of the Complaint.

278. Defendants deny the allegations of Paragraph 278 of the Complaint.

**THIRTY-FOURTH CLAIM FOR RELIEF**

**(Breach of Implied Covenant of Good Faith and Fair Dealing – Against J. Clark)**

279. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

280. Defendants admit the allegations in Paragraph 280 of the Complaint.

281. Defendants admit the allegations of Paragraph 281 of the Complaint.

282. Defendants deny the allegations of Paragraph 282 of the Complaint.

283. Defendants deny the allegations of Paragraph 283 of the Complaint.

**THIRTY-FIFTH CLAIM FOR RELIEF**

**(Breach of Implied Covenant of Good Faith and Fair Dealing – Against Tate)**

284. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

285. Defendants admit the allegations in Paragraph 285 of the Complaint.

18a. Defendants admit the allegations of second Paragraph 18 on page 31 of the Complaint.

286. Defendants deny the allegations of Paragraph 286 of the Complaint.

287. Defendants deny the allegations of Paragraph 287 of the Complaint.

**THIRTY-SIXTH CLAIM FOR RELIEF**

**(Securities Fraud – Against W. Clark)**

288. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

289. Defendants deny the allegations in Paragraph 289 of the Complaint.

290. Defendants deny the allegations of Paragraph 290 of the Complaint.

291. Defendants admit the allegations of Paragraph 291 of the Complaint, and further aver that W. Clark made no untrue statement of material fact nor a material omission.

292. Defendants deny the allegations of Paragraph 292 of the Complaint.

293. Defendants deny the allegations of Paragraph 293 of the Complaint.

**THIRTY-SEVENTH CLAIM FOR RELIEF**

**(Insider Trading – Against W. Clark)**

294. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

295. Defendants admit the allegations in Paragraph 295 of the Complaint.

19a. Defendants deny the allegations of second Paragraph 19 on page 32 of the Complaint.

296. Defendants deny the allegations of Paragraph 296 of the Complaint.

297. Defendants deny the allegations of Paragraph 297 of the Complaint.

298. Defendants deny the allegations of Paragraph 298 of the Complaint.

**THIRTY-EIGHTH CLAIM FOR RELIEF**

**(Violation of Federal Computer Fraud and Abuse Act –**
**Against All Defendants**

299. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

300. Defendants deny the allegations in Paragraph 300 of the Complaint.

301. Defendants deny the allegations of Paragraph 301 of the Complaint.

302. Defendants deny the allegations of Paragraph 302 of the Complaint.

303. Defendants deny the allegations of Paragraph 303 of the Complaint.

304. Defendants deny the allegations of Paragraph 304 of the Complaint.

305. Defendants deny the allegations of Paragraph 305 of the Complaint.

306. Defendants deny the allegations of Paragraph 306 of the Complaint.

**THIRTY-NINTH CLAIM FOR RELIEF**

**(Aiding and Abetting – Against All Defendants)**

307. Defendants incorporate by reference their responses to Paragraphs 1-101 as if fully set forth herein.

308. Defendants deny the allegations in Paragraph 308 of the Complaint.

309. Defendants deny the allegations of Paragraph 309 of the Complaint.

310. Defendants deny the allegations of Paragraph 310 of the Complaint.

311. Defendants deny the allegations of Paragraph 311 of the Complaint.

312. Defendants deny the allegations of Paragraph 312 of the Complaint.

313. Defendants deny the allegations of Paragraph 313 of the Complaint.

314. Defendants admit the allegations of Paragraph 314 of the Complaint and likewise demand a jury trial on all issues triable to a jury.

315. To the extent not expressly admitted herein, Defendants deny each and every allegation in the Complaint.

316. Plaintiff fails to state claims upon which relief can be granted.

317. Defendants deny that Plaintiff suffered any damages and further denies that Plaintiff is entitled to any relief.

**AFFIRMATIVE DEFENSES**

318. Plaintiff's claims are barred in full or in part because Plaintiff failed to plead the claims with adequate specificity.

319. Plaintiff's claims are barred in full or in part because Plaintiff materially breached the contracts relied on.

320. Plaintiff's claims are barred in full or in part because the contractual provisions relied on are illegal or unenforceable.

321. Plaintiff's claims are barred in full or in part because Plaintiff failed to mitigate damages.

322. Plaintiff's claims are barred in full or in part based on unclean hands.

323. Plaintiff's claims are barred in full or in part because Plaintiff lacks standing to assert the claim.

324. Plaintiff's claims are barred in full or in part because Defendants were privileged to engage in the conduct at issue.

325. Plaintiff's claims are barred in full or in part due to insufficient process or insufficient service of process.

326. Defendants assert any other affirmative defenses that may be applicable based on the evidence in this case, including those set forth in Fed. R. Civ. P. 8(c) and elsewhere in Arizona law.

WHEREFORE, having fully answered the Complaint, Defendants pray for judgment against Plaintiff on the Complaint as follows:

A. That the Court dismiss the Complaint with prejudice and Plaintiff take nothing thereby;

B. That the Court award Defendants their reasonable attorneys' fees and costs; and,

C. That the Court grant such other and further relief as the Court deems appropriate.

## COUNTERCLAIM

Counterclaimants William Clark ("W. Clark"), Justin Clark ("J. Clark"), Sean Tate ("S. Tate") and Phasive, Inc. ("Phasive") for their Counterclaim state as follows:

1. The court has supplemental jurisdiction over these claims under 28 U.S.C. § 1367.

### Count One (W. Clark-Breach of Contract)

2. On June 13, 2016, Spindle and W. Clark entered into a Transition Agreement, under which Spindle promised to pay W. Clark his annual salary of $200,000 on a prorated basis from that date through July 31, 2016 and to issue to him 1,000,000 shares of Spindle stock in exchange for W. Clark transferring certain Spindle

property and information to the company and his continued effort and time related to the finalization of two contemplated transactions.

3. The Transition Agreement, at Paragraph 6.a., likewise provided that: "This Agreement supersedes all prior agreements, oral or written, between the parties and is intended as a complete and exclusive statement of the agreement between the parties."

4. On June 30, 2016, Spindle escorted W. Clark off the premises, purporting to terminate the Transition Agreement effective immediately.

5. Spindle then refused to pay W. Clark the final month of salary under the Transition Agreement, totaling $16,667.

6. Although Spindle authorized and issued the initial 500,000 shares of stock to W. Clark, Spindle has refused to transfer the additional 500,000 shares of stock owed under the Transition Agreement.

7. W. Clark fully performed his obligations under the Transition Agreement, even continuing to assist interim CEO Michael Schwartz in mid-July 2016.

8. Spindle owes W. Clark the additional $16,667 in salary for July 2016 and the additional 500,000 shares of Spindle stock.

9. Spindle breached its contract with W. Clark by failing to pay the additional month of salary and the additional 500,000 shares of Spindle stock.

10. As a result of Spindle's breach, W. Clark has suffered damages in an amount to be proven at trial.

11. W. Clark is entitled to recover his attorneys' fees incurred herein pursuant to A.R.S. § 12-341.01.

**Count Two (W. Clark-Arizona Wage Act)**

12. W. Clark incorporates herein all previous allegations in this Counterclaim.

13. As set forth above, Spindle failed and refused to pay W. Clark one month of salary and 500,000 shares of Spindle stock.

14. At all relevant times, W. Clark was an employee performing services under the Arizona Wage Act, A.R.S. § 23-350, *et seq*.

15. At all relevant times, Spindle was an employer employing W. Clark under the Arizona Wage Act, A.R.S. § 23-350, *et seq*.

16. W. Clark's salary and stock owed under the Transition Agreement are wages under the Arizona Wage Act, A.R.S. § 23-350, *et seq*.

17. Spindle violated A.R.S. §§ 23-352 and 23-353 by withholding or diverting W. Clark's wages.

18. W. Clark is entitled to treble damages under A.R.S. § 23-355.

19. W. Clark is entitled to recover his attorneys' fees incurred herein pursuant to A.R.S. § 12-341.01.

**Count Three (S. Tate-Breach of Contract)**

20. S. Tate incorporates herein all previous allegations in this Counterclaim.

21. S. Tate had a contractual employment relationship with Spindle.

22. Spindle's consistent company practice at the time of the June 30 terminations was to pay departing employees their accrued, unused paid time off.

23. Spindle's practice was an implied term of S. Tate's contractual employment relationship.

24. When Spindle terminated S. Tate's employment on June 30, 2016, the company failed to pay him the accrued, unused paid time off.

25. At the time of the termination of his employment, S. Tate had 64.5 hours of accrued, unused PTO valued at $3,770 (based on his prorated salary of $58.45/hour).

26. Spindle breached its contract with S. Tate by failing to pay him the accrued, unused paid time off.

27. As a result of Spindle's breach, S. Tate has been damages in an amount to be proven at trial.

28. S. Tate is entitled to recover his attorneys' fees incurred herein pursuant to A.R.S. § 12-341.01.

**Count Four (S. Tate-Arizona Wage Act)**

29. S. Tate incorporates herein all previous allegations in this Counterclaim.

30. As set forth above, Spindle failed and refused to pay S. Tate for his accrued, unused paid time off at the time his employment was terminated.

31. At all relevant times, S. Tate was an employee performing services under the Arizona Wage Act, A.R.S. § 23-350, *et seq.*

32. At all relevant times, Spindle was an employer employing S. Tate under the Arizona Wage Act, A.R.S. § 23-350, *et seq.*

33. S. Tate's accrued, unused paid time off was wages under the Arizona Wage Act, A.R.S. § 23-350, *et seq.*

34. Spindle violated A.R.S. §§ 23-352 and 23-353 by withholding or diverting S. Tate's wages.

35. S. Tate is entitled to treble damages under A.R.S. § 23-355.

36. S. Tate is entitled to recover his attorneys' fees incurred herein pursuant to A.R.S. § 12-341.01.

**Count Five (J. Clark-Breach of Contract)**

37. J. Clark incorporates herein all previous allegations in this Counterclaim.

38. J. Clark had a contractual employment relationship with Spindle.

39. Spindle's consistent company practice at the time of the June 30 terminations was to pay departing employees their accrued, unused paid time off.

40. Spindle's practice was an implied term of J. Clark's contractual employment relationship.

41. When Spindle terminated J. Clark's employment on June 30, 2016, the company failed to pay him the accrued, unused paid time off.

42. At the time of the termination of his employment, J. Clark had 63 hours of accrued, unused PTO valued at $2,423 (based on his prorated salary of $38.46/hour).

43. Spindle breached its contract with J. Clark by failing to pay him the accrued, unused paid time off.

44. As a result of Spindle's breach, J. Clark has been damages in an amount to be proven at trial.

45. J. Clark is entitled to recover his attorneys' fees incurred herein pursuant to A.R.S. § 12-341.01.

**Count Six (J. Clark-Arizona Wage Act)**

46. J. Clark incorporates herein all previous allegations in this Counterclaim.

47. As set forth above, Spindle failed and refused to pay J. Clark for his accrued, unused paid time off at the time his employment was terminated.

48. At all relevant times, J. Clark was an employee performing services under the Arizona Wage Act, A.R.S. § 23-350, *et seq.*

49. At all relevant times, Spindle was an employer employing J. Clark under the Arizona Wage Act, A.R.S. § 23-350, *et seq.*

50. J. Clark's accrued, unused paid time off was wages under the Arizona Wage Act, A.R.S. § 23-350, *et seq.*

51. Spindle violated A.R.S. §§ 23-352 and 23-353 by withholding or diverting J. Clark's wages.

52. J. Clark is entitled to treble damages under A.R.S. § 23-355.

53. J. Clark is entitled to recover his attorneys' fees incurred herein pursuant to A.R.S. § 12-341.01.

**Count Seven (Phasive-Tortious Interference)**

54. Phasive incorporates herein all previous allegations in this Counterclaim.

55. Pursuant to the Transition Agreement, Spindle authorized and issued to W. Clark the initial 500,000 shares of Spindle restricted stock shortly after the execution of the Transition Agreement.

56. Spindle's legitimate authorization and issuance of these shares was acknowledged on page 24 of Spindle's report for the Second Quarter filed with the SEC on August 15, 2016.

57. W. Clark owns an additional 3,249,694 Spindle shares.

58. In July 2016, W. Clark entered into an agreement with Phasive to transfer his 3,749,694 shares of Spindle stock to Phasive.

59. Spindle learned of Phasive's contractual right or business expectancy when W. Clark submitted to Spindle the required request to transfer his shares to Phasive.

60. Despite that W. Clark indisputably owns all 3,749,694 of those Spindle shares, when Spindle received a request to transfer those shares from W. Clark to Phasive, Inc., Spindle immediately stopped the transfer of the shares with no grounds to do so.

61. By abusing its power over the transfer of the shares with no legal basis for doing so, Spindle engaged in actionable intentional interference with Phasive, Inc.'s contract or business expectancy with W. Clark to obtain the shares.

62. Phasive had a valid and existing contractual relationship or business expectancy with W. Clark.

63. Spindle knew the contractual relationship or business expectancy existed.

64. Spindle intentionally interfered with Phasive's contractual relationship or business expectancy by stopping the transfer of shares.

65. Spindle's conduct prevented W. Clark from transferring his shares to Phasive.

66. Spindle's conduct in stopping the transfer of shares was improper in that it involved a wrongful motive and/or wrongful means.

67. As a result of Spindle's interference, Phasive has suffered harm.

68. Based on the August 30, 2016 closing price, the value of those shares was $749,564.

69. Phasive is entitled to recover its attorneys' fees incurred herein pursuant to A.R.S. § 12-341.01.

**Count Eight (W. Clark/J. Clark/S. Tate-Defamation)**

70. The Clarks and S. Tate incorporate herein all previous allegations in this Counterclaim.

71. Immediately after Spindle terminated W. Clark, J. Clark and S. Tate on June 30, 2016, an agent of the company began making false and defamatory allegations against them on the Yahoo Finance message boards, among other places.

72. In the early morning hours of July 1, 2016, a Yahoo Finance member account was created with the username "fgtwhyertewqrererewqrewr". Upon information and belief, that user was an agent of Spindle.

73. That user immediately began making false and defamatory allegations against the Clarks and/or S. Tate, including:

a. That W. Clark and J. Clark violated the trust of the company's shareholders [July 1, 2016 1:17 am];

b. That W. Clark and J. Clark are stupid, brazen, and committed multiple criminal acts, for which they will likely end up in a prison cell [July 2, 2016 8:10 am];

c. That W. Clark had surreptitiously put family members on the company payroll [July 3, 2016 10:22 am];

d. That the Clark family are thieves [July 3, 2016 10:22 am];

e. That W. Clark's hiring of his wife to work for Spindle was somehow incompetent/inappropriate nepotism because she previously owned a house cleaning franchise [July 4, 2016 3:17 pm];

f. That W. Clark wasted shareholder money [July 4, 2016 3:17 pm];

g. That, while working for Spindle, W. Clark and J. Clark simultaneously built a new company and another completely independent platform providing a next gen consumer engagement platform and aggregation engine and implying that they stole Spindle products to do so [July 11, 2016 10:43 am]; and,

h. That W. Clark and J. Clark routinely missed deadlines over and over for Spindle [July 11, 2016 10:43 am].

74. Shortly after the July 11, 10:43 am posting, W. Clark sent an email to the Spindle board members, indicating that the message board posts by fgtwhyertewqrererewqrewr, which included sharing additional personal information about the Clarks and S. Tate, violated the Arizona cyber stalking laws and indicating an intent to report the criminal activity to the Scottsdale Police Department. That user account immediately stopped posting on the message boards.

75. For a variety of reasons, it is obvious that user fgtwhyertewqrererewqrewr is or was an individual inside or closely related to Spindle.

a. First, the initial post at 1:17 am on July 1 referred to the Clarks and S. Tate's relationship with Spindle in the past tense, despite that the message was posted less than fourteen hours after Spindle terminated my clients' relationship with Spindle and before any public disclosure regarding the terminations.

b. Second, the message at 8:10 am on July 2 references "an investment company called 3G"—a company that Spindle had only privately alleged that the Clarks and S. Tate were seeking out in violation of their fiduciary duties (despite there was no basis for the allegation).

c. Third, at 7:20 pm on July 5, the user referenced several personal details regarding the Clarks including an alleged meeting "with Cielo in Miami", which was based on statements made by W. Clark and J. Clark just days before and only to individuals within Spindle.

d. Finally, all message board posts by the user fgtwhyertewqrererewqrewr were directed at the Clarks and S. Tate and occurred between July 1 and July 11, 2016 and ended immediately upon W. Clark's email to the Spindle board members.

76. In the early morning hours on July 2, 2016, another Yahoo Finance Member account was created using the user name "timthomas612". Upon information and belief, that user was an agent of Spindle.

77. That user similarly directed all of his comments at W. Clark and J. Clark. Specifically, that user falsely stated that W. Clark and J. Clark had engaged in incompetence and that W. Clark's nepotism and protectionism caused Spindle to fail. [July 2, 2016, 3:21 am.]

78. Subsequently, another user appeared on the revamped Yahoo Conversations board under the user name "BS". Upon information and belief, that user was an agent of Spindle.

79. All messages posted by that user related to Spindle, were posted after the June 30 departure of the Clarks and S. Tate, and related either directly or indirectly to the departures of the Clarks and S. Tate.

80. That user posted several messages starting August 9, 2016 indicating knowledge of insider information and posting only about the Clarks and S. Tate.

81. Among the false and defamatory statements, BS posted that W. Clark was incompetent as CEO [Aug. 9, 2016] and subsequently on multiple occasions posted false and defamatory statements from the filed complaint [Aug. 12-18, 2016].

82. It is clear that BS was a Spindle insider as the user identified S. Tate as the individual who had previously posted under an anonymous user name, despite that such information was only shared by W. Clark with the Spindle board members.

83. Moreover, on August 12, 2016, immediately after W. Clark sent an email to Board Chairman Frank Knuettel asking him to direct his minion to stop posting on the message boards about the case, user BS deleted his own post referencing the insider information regarding S. Tate and retaliated by republishing several defamatory statements in the filed complaint.

84. In the complaint filed in this case on August 2, 2016, Spindle made numerous false and defamatory statements regarding the Clarks and S. Tate with no good faith factual basis at all, including the following:

a. that W. Clark stole from Spindle;

b. that W. Clark breached every duty recognized in law as obligations of corporate officials;

c. that the Clarks and S. Tate willfully, knowingly and fully participated in a premeditated and unconscionable scheme to damage Spindle;

d. that the Clarks and S. Tate improperly solicited Spindle's employees, customers and investors;

e. that W. Clark engaged in gross misconduct;

f. that upon his termination, W. Clark threw a "childish hissy fit", that he threatened Spindle, that he set out to exact revenge against the company and its shareholders, and that he stated he planned to start his own version of Yowza!! when he left Spindle;

g. that W. Clark engaged in extortion with respect to the Transition Agreement;

h. that W. Clark lied to the board and investors and engaged in knowing misconduct or gross negligence with respect to management of Spindle;

i. that W. Clark manipulated stock prices;

j. that the Clarks and S. Tate breached their fiduciary duties to Spindle;

k. that the Clarks and S. Tate stole Spindle's business, intellectual and personal property;

l. that J. Clark stole a television and computer containing proprietary information and trade secrets; and,

m. that W. Clark caused an unauthorized transfer of 500,000 shares to himself.

85. Upon information and belief, Spindle attempted to destroy or hide evidence of its defamatory misconduct by having the conversation boards related to Spindle removed from the Yahoo Finance website.

86. After the Clarks and S. Tate sent a letter to Spindle alleging the destruction of the message board evidence on September 1, 2016, the message boards reappeared on the Yahoo Finance website on approximately September 2, 2016.

87. The Clarks and S. Tate each held high level positions with Spindle and previous employers requiring significant trust and hope to hold such positions in the future with other entities.

88. The repeated defamatory statements described above will make it extremely difficult, if not impossible, for any of them to obtain employment opportunities similar to the positions they held with Spindle and previous employers.

89. If they are unable to obtain comparable positions, W. Clark, S. Tate, and J. Clark estimate that their economic damages suffered through retirement will be $2.5 million, $2.5 million, and $3.7 million, respectively.

90. As described above, on several occasions, Spindle through its agents published to third parties false and defamatory statements regarding the Clarks and S. Tate that impeached their reputations and/or prejudiced their ability to engage in their profession, trade or business.

91. Spindle and its agents published the false and defamatory statements with knowledge, recklessly disregarding, or negligently failing to ascertain that the statements were false.

92. As a direct result of Spindle's conduct described above, W. Clark, S. Tate, and J. Clark have suffered pain and suffering, emotional distress, humiliation, inconvenience, harm to reputation, loss of standing in the community, and other losses.

93. Spindle's conduct described above was aggravated, outrageous, and guided by an evil mind; accordingly, the Clarks and S. Tate are entitled to an award of punitive damages against Spindle.

**Count Nine (W. Clark/J. Clark/S. Tate-False Light Invasion of Privacy)**

94. The Clarks and S. Tate incorporate herein all previous allegations in this Counterclaim.

95. As described above, Spindle through its agents published false information or innuendo concerning W. Clark, J. Clark and S. Tate's character, history and activities that places them in a false light that would be highly offensive to a reasonable person.

96. Spindle and its agents had knowledge or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the others would be placed.

97. As a direct result of Spindle's conduct described above, W. Clark, J. Clark and S. Tate have suffered pain and suffering, emotional distress, humiliation, inconvenience, harm to reputation, loss of standing in the community, and other losses.

98. Spindle's conduct described above was aggravated, outrageous, and guided by an evil mind; accordingly, the Clarks and S. Tate are entitled to an award of punitive damages against Spindle.

WHEREFORE, Counterclaimants William Clark, Justin Clark, Sean Tate and Phasive, Inc. pray for judgment against Counterdefendant Spindle, Inc. as follows:

A. For an award of unpaid salary, stock and other compensation in an amount to be proven at trial;

B. For an award of treble damages on the unpaid compensation;

C. For an award of economic damages in an amount sufficient to make Counterclaimants whole for the harm resulting from Counterdefendant's conduct;

D. For an award of other compensatory damages for pain and suffering, emotional distress, humiliation, inconvenience, harm to reputation and standing in the community, and other losses incurred by Counterclaimants as a result of Counterdefendant's conduct;

E. For an award of punitive damages;

F. For an award of prejudgment and post-judgment interest;

G. For an award of attorneys' fees and related expenses;

H. For an award of Plaintiff's costs of suit incurred herein; and,

I. For an award of such other relief as the Court may deem just and proper.

DATED this 8th day of September 2016.

ROBAINA & KRESIN, P.L.L.C.

By /s/David C. Kresin
David C. Kresin
Thomas T. Griffin
Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of September 2016, I caused the attached document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF Registrants:

David G. Bray
DICKINSON WRIGHT PLLC
1850 North Central Avenue, Suite 1400
Phoenix, Arizona 85004
dbray@dickinsonwright.com

Attorneys for Plaintiff Spindle, Inc.

By /s/David C. Kresin