1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

9

Spindle, Inc., a Nevada corporation,

10

Plaintiff,

11

vs.

12

William Clark and Joann Clark, husband and wife, Justin Clark, an individual;

13

Sean Tate and Patricia La Due-Tate, husband and wife; and Phasive, Inc., an

14

Arizona Corporation,

15

Defendants.

16

CIV 16-2613-PHX-MHB

**ORDER**

17        Pending before the Court is Defendants' Motion for Partial Judgment on the Pleadings

18   pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Doc. 35). Plaintiff has filed

19   a Response (Doc. 39) and Defendants have filed a Reply (Doc. 41). The parties requested

20   oral argument, which was held on February 9, 2017. After considering the arguments raised

21   by the parties in their briefing and in oral argument, the Court now issues the following

22   ruling.

23                            **PROCEDURAL HISTORY**

24        On September 16, 2016, Plaintiff filed a First Amended Complaint ("FAC") alleging

25   40 Counts against Defendants. (Doc. 24.)  In the FAC, Plaintiff states: "William Clark,

26   entrusted with the stewardship of a young and dynamic Arizona-based commerce solutions

27   company, stole from it, deceived its directors and shareholders, and breached every duty

28   recognized in law as obligations of corporate officials. And, William Clark's minions – his

son Justin and Sean Tate – participated willfully, knowingly and fully in William Clark's premeditated and unconscionable damage to Plaintiff. This action arises from the Defendants' numerous violations and breaches of their contractual, statutory, common law, and fiduciary duties to Plaintiff. These three Defendants, together and separately, while feigning loyalty to Plaintiff, misappropriated Plaintiff's intellectual and personal property, improperly solicited Plaintiff's employees, customers, and investors, and engaged in various other wrongful acts that damaged irreparably Plaintiff's business and reputation. As a result of the Defendants' wrongful conduct, Plaintiff seeks injunctive relief and monetary damages, pursuant to federal and state statutes, and common law."  (FAC ¶¶ 1, 2.)

Plaintiff alleges the following claims for relief:

FIRST CLAIM FOR RELIEF
(Breach of Contract – Against W. Clark)
108. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.
109. Spindle and W. Clark entered into a valid and existing contract.
110. Spindle performed or was excused from performance.
111. W. Clark breached the contract.
112. As a result of W. Clark's contract breaches, Spindle sustained damages in an amount to be ascertained at trial.

SECOND CLAIM FOR RELIEF
(Breach of Contract – Against J. Clark)
113. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.
114. Spindle and J. Clark entered into a valid and existing contract.
115. Spindle performed or was excused from performance.
116. J. Clark breached the contract.
117. As a result of J. Clark's contract breaches, Spindle has sustained damages in an amount to be ascertained at trial.

THIRD CLAIM FOR RELIEF
(Breach of Contract – Against Tate)
118. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.
119. Spindle and Tate entered into a valid and existing contract.
120. Spindle performed or was excused from performance.
121. Tate breached the contract.
122. As a result of Tate's breaches, Spindle has sustained damages in an amount to be ascertained at trial.

FOURTH CLAIM FOR RELIEF
(Breach of Fiduciary Duty – Against W. Clark)
123. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.
124. W. Clark owed a fiduciary duty to Spindle.

125. W. Clark breached that duty.

126. As a result of W. Clark's breaches of his fiduciary duties, Spindle has sustained damages in an amount to be ascertained at trial.

FIFTH CLAIM FOR RELIEF
(Breach of Fiduciary Duty – Against J. Clark)

127. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.

128. J. Clark owed a fiduciary duty to Spindle.

129. J. Clark breached that duty.

130. As a result of J. Clark's breaches of his fiduciary duties, Spindle has sustained damages in an amount to be ascertained at trial.

SIXTH CLAIM FOR RELIEF
(Breach of Fiduciary Duty – Against Tate)

131. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.

132. Tate owed a fiduciary duty to Spindle.

133. Tate breached that duty.

134. As a result of Tate's breaches of his fiduciary duties, Spindle has sustained damages in an amount to be ascertained at trial.

135. Spindle has been required to retain an attorney and to incur attorney's fees and court costs herein.

SEVENTH CLAIM FOR RELIEF
(Unfair Competition – Against W. Clark)

136. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.

137. Spindle invested substantial time, skill and money in developing its property, including but not limited to, its intellectual property, trade secrets, marketing strategy, business goodwill, employees, customers, and investors.

138. W. Clark misappropriated and used Spindle's property at little or no cost.

139. W. Clark's misappropriation and use of Spindle's property was without Spindle's authorization or consent.

140. W. Clark's misconduct described above constitutes unfair competition under Arizona law.

141. As a result of W. Clark's unfair competition, Spindle has sustained damages in an amount to be ascertained at trial.

EIGHTH CLAIM FOR RELIEF
(Unfair Competition – Against J. Clark)

142. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.

143. Spindle invested substantial time, skill and money in developing its property, including but not limited to its intellectual property, trade secrets, marketing strategy, business goodwill, employees, customers, and investors.

144. J. Clark misappropriated and used Spindle's property at little or no cost.

145. J. Clark's misappropriation and use of Spindle's property was without Spindle's authorization or consent.

146. J. Clark's misconduct described above constitutes unfair competition under Arizona law.

147. As a result of J. Clark's unfair competition, Spindle has sustained damages in an amount to be ascertained at trial.

NINTH CLAIM FOR RELIEF
(Unfair Competition – Against Tate)
148. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.
149. Spindle invested substantial time, skill and money in developing its property, including but not limited to its intellectual property, trade secrets, marketing strategy, business goodwill, employees, customers, and investors.
150. Tate misappropriated and used Spindle's property at little or no cost.
151. Tate's misappropriation and use of Spindle's property was without Spindle's authorization or consent.
152. Tate's misconduct described above constitutes unfair competition under Arizona law.
153. As a result of Tate's unfair competition, Spindle has sustained damages in an amount to be ascertained at trial.

TENTH CLAIM FOR RELIEF
(Unfair Competition – Against Phasive)
154. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.
155. Spindle invested substantial time, skill and money in developing its property, including but not limited to its intellectual property, trade secrets, marketing strategy, business goodwill, employees, customers, and investors.
156. Phasive misappropriated and used Spindle's property at little or no cost.
157. Phasive's misappropriation and use of Spindle's property was without Spindle's authorization or consent.
158. Phasive's misconduct described above constitutes unfair competition under Arizona law.
159. As a result of Phasive's unfair competition, Spindle has sustained damages in an amount to be ascertained at trial.

ELEVENTH CLAIM FOR RELIEF
(Misappropriation of Trade Secrets under the Defend Trade Secrets Act and the Arizona Trade Secrets Act – Against W. Clark)
160. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.
161. W. Clark misappropriated Spindle's valuable trade secrets through the use and disclosure of the trade secrets.
162. W. Clark's misappropriation of Spindle's trade secrets was wrongful because it was made in breach of an express or implied contract not to disclose.
163. W. Clark's misappropriation of Spindle's trade secrets was wrongful because W. Clark had a duty not to disclose.
164. Spindle's trade secrets that were misappropriated by W. Clark relate to a product or service used in, or intended for use in, interstate commerce
17. As a result of W. Clark's misappropriation of trade secrets, Spindle has sustained damages in an amount to be ascertained at trial.

TWELFTH CLAIM FOR RELIEF
(Misappropriation of Trade Secrets under the Defend Trade Secrets Act and the Arizona Trade Secrets Act – Against J. Clark)
165. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.
166. J. Clark misappropriated Spindle's valuable trade secrets through the use and disclosure of the trade secrets.

167. J. Clark's misappropriation of Spindle's trade secrets was wrongful because it was made in breach of an express or implied contract not to disclose.

168. J. Clark's misappropriation of Spindle's trade secrets was wrongful because J. Clark had a duty not to disclose.

169. Spindle's trade secrets that were misappropriated by J. Clark relate to a product or service used in, or intended for use in, interstate commerce

170. As a result of J. Clark's misappropriation of trade secrets, Spindle has sustained damages in an amount to be ascertained at trial.

THIRTEENTH CLAIM FOR RELIEF
(Misappropriation of Trade Secrets under the Defend Trade Secrets Act and the Arizona Trade Secrets Act – Against Tate)

171. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.

172. Tate misappropriated Spindle's valuable trade secrets through the use and disclosure of the trade secrets.

173. Tate's misappropriation of Spindle's trade secrets was wrongful because it was made in breach of an express or implied contract not to disclose.

174. Tate's misappropriation of Spindle's trade secrets was wrongful because Tate had a duty not to disclose.

175. Spindle's trade secrets that were misappropriated by Tate relate to a product or service used in, or intended for use in, interstate commerce

176. As a result of Tate's misappropriation of trade secrets, Spindle has sustained damages in an amount to be ascertained at trial.

FOURTEENTH CLAIM FOR RELIEF
(Misappropriation of Trade Secrets under the Defend Trade Secrets Act and the Arizona Trade Secrets Act –Against Phasive)

177. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.

178. Phasive misappropriated Spindle's valuable trade secrets through the use and disclosure of the trade secrets.

179. Phasive's misappropriation of Spindle's trade secrets was wrongful because Phasive had a duty not to disclose and/or because Phasive knew that it acquired Spindle's trade secrets from parties (W. Clark, J. Clark and/or Tate) who had a duty not to disclose.

180. Spindle's trade secrets that were misappropriated by Phasive relate to a product or service used in, or intended for use in, interstate commerce

181. As a result of Phasive's misappropriation of trade secrets, Spindle has sustained damages in an amount to be ascertained at trial.

FIFTEENTH CLAIM FOR RELIEF
(Tortious Interference with Contractual Relations – Against W. Clark)

182. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.

183. There exist valid contracts between Spindle and third-parties for business and commercial services. There also exist valid contracts between Spindle and its current and former employees.

184. W. Clark knew of these contracts.

185. W. Clark committed intentional acts intended to disrupt these contractual relationships.

186. Spindle's contractual relationships were disrupted.

187. As a result of W. Clark's tortious interference with contractual relations, Spindle has sustained damages in an amount to be ascertained at trial.

SIXTEENTH CLAIM FOR RELIEF
(Tortious Interference with Contractual Relations – Against J. Clark)
188. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.
189. There exist valid contracts between Spindle and third-parties for business and commercial services. There also exist valid contracts between Spindle and its current and former employees.
190. J. Clark knew of these contracts.
191. J. Clark committed intentional acts intended to disrupt these contractual relationships.
192. Spindle's contractual relationships were disrupted.
193. As a result of J. Clark's tortious interference with contractual relations, Spindle has sustained damages in an amount to be ascertained at trial.

SEVENTEENTH CLAIM FOR RELIEF
(Tortious Interference with Contractual Relations – Against Phasive)
194. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.
195. There exist valid contracts between Spindle and third-parties for business and commercial services. There also exist valid contracts between Spindle and its current and former employees.
196. Phasive knew of these contracts.
197. Phasive committed intentional acts intended to disrupt these contractual relationships.
198. Spindle's contractual relationships were disrupted.
199. As a result of Phasive's tortious interference with contractual relations, Spindle has sustained damages in an amount to be ascertained at trial.

EIGHTEENTH CLAIM FOR RELIEF
(Tortious Interference with Contractual Relations – Against Tate)
200. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.
201. There exist valid contracts between Spindle and third-parties for business and commercial services. There also exist valid contracts between Spindle and its current and former employees.
202. Tate knew of these contracts.
203. Tate committed intentional acts intended to disrupt these contractual relationships.
204. Spindle's contractual relationships were disrupted.
205. As a result of Tate's tortious interference with contractual relations, Spindle has sustained damages in an amount to be ascertained at trial.

NINETEENTH CLAIM FOR RELIEF
(Tortious Interference with Prospective Economic Advantage – Against W. Clark)
206. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.
207. There exist prospective contractual relationships between Spindle and third-parties for business and commercial services. There also exist prospective contractual relationships between Spindle and its current and prospective investors.
208. W. Clark knew of these prospective contractual relationships.
209. W. Clark committed intentional acts intended to prevent these prospective contractual relationships.

210. W. Clark's actions were neither privileged nor justified.

211. As a result of W. Clark's tortious interference with prospective economic advantage, Spindle has sustained damages in an amount to be ascertained at trial.

TWENTIETH CLAIM FOR RELIEF
(Tortious Interference with Prospective Economic Advantage – Against J. Clark)

212. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.

213. There exist prospective contractual relationships between Spindle and third-parties for business and commercial services. There also exist prospective contractual relationships between Spindle and its current and prospective investors.

214. J. Clark knew of these prospective contractual relationships.

215. J. Clark committed intentional acts intended to prevent these prospective contractual relationships.

216. J. Clark's actions were neither privileged nor justified

217. As a result of J. Clark's tortious interference with prospective economic advantage, Spindle has sustained damages in an amount to be ascertained at trial.

TWENTY-FIRST CLAIM FOR RELIEF
(Tortious Interference with Prospective Economic Advantage – Against Tate)

218. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.

219. There exist prospective contractual relationships between Spindle and third-parties for business and commercial services. There also exist prospective contractual relationships between Spindle and its current and prospective investors.

220. Tate knew of these prospective contractual relationships.

221. Tate committed intentional acts intended to prevent these prospective contractual relationships.

222. Tate's actions were neither privileged nor justified.

223. As a result of Tate's tortious interference with prospective economic advantage, Spindle has sustained damages in an amount to be ascertained at trial.

TWENTY-SECOND CLAIM FOR RELIEF
(Tortious Interference with Prospective Economic Advantage – Against Phasive)

224. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.

225. There exist prospective contractual relationships between Spindle and third-parties for business and commercial services. There also exist prospective contractual relationships between Spindle and its current and prospective investors.

226. Phasive knew of these prospective contractual relationships.

227. Phasive committed intentional acts intended to prevent these prospective contractual relationships.

228. Phasive's actions were neither privileged nor justified.

229. As a result of Phasive's tortious interference with prospective economic advantage, Spindle has sustained damages in an amount to be ascertained at trial.

TWENTY-THIRD CLAIM FOR RELIEF
(Defamation – Against W. Clark)
230. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.
231. W. Clark made false and defamatory statements concerning Spindle, including but not limited to that Spindle would go bankrupt and that Spindle employees would lose their jobs.
232. An unprivileged publication of these statements was made to a third person.
233. W. Clark was at least negligent in making these statements.
234. As a result of W. Clark's defamation, Spindle has sustained damages in an amount to be ascertained at trial.

TWENTY-FOURTH CLAIM FOR RELIEF
(Defamation – Against J. Clark)
235. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.
236. J. Clark made false and defamatory statements concerning Spindle, including but not limited to that Spindle would go bankrupt and that Spindle employees would lose their jobs.
237. An unprivileged publication of these statements was made to a third person.
238. J. Clark was at least negligent in making these statements.
239. As a result of J. Clark's defamation, Spindle has sustained damages in an amount to be ascertained at trial.

TWENTY-FIFTH CLAIM FOR RELIEF
(Defamation – Against Tate)
240. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.
241. Tate made false and defamatory statements concerning Spindle, including but not limited to that Spindle would go bankrupt and that Spindle employees would lose their jobs.
242. An unprivileged publication of these statements was made to a third person.
243. Tate was at least negligent in making these statements.
244. As a result of Tate's defamation, Spindle has sustained damages in an amount to be ascertained at trial.

TWENTY-SIXTH CLAIM FOR RELIEF
(Defamation – Against Phasive)
245. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.
246. Phasive made false and defamatory statements concerning Spindle, including but not limited to that Spindle would go bankrupt and that Spindle employees would lose their jobs.
247. An unprivileged publication of these statements was made to a third person.
248. Phasive was at least negligent in making these statements.
249. As a result of Phasive's defamation, Spindle has sustained damages in an amount to be ascertained at trial.

TWENTY-SEVENTH CLAIM FOR RELIEF
(Conspiracy – Against All Defendants)
250. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.
251. Defendants, by acting in concert, intended to accomplish an unlawful objective for the purpose of harming Spindle.
252. Defendants acted together and had an agreement to misappropriate Spindle's property and undermine Spindle's relationships with its customers, investors, and employees.
253. Defendants sought to destroy Spindle's business throughout the world.
254. As a result, Spindle has sustained damages in an amount to be ascertained at trial.

TWENTY-EIGHTH CLAIM FOR RELIEF
(Concert of Action – Against All Defendants)
255. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.
256. Defendants acted with one another to commit a tort while acting in concert or pursuant to a common design.
257. Defendants acted together and had an agreement to misappropriate Spindle's property and undermine Spindle's relationships with its customers, investors, and employees.
258. Defendants sought to destroy Spindle's business throughout the world.
259. Defendants sought to obtain Spindle's business for themselves.
260. As a result, Spindle has sustained damages in an amount to be ascertained at trial.

TWENTY-NINTH CLAIM FOR RELIEF
(Breach of Duty of Loyalty – Against W. Clark)
261. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.
262. W. Clark was Spindle's agent.
263. W. Clark breached his agency obligations by not acting as a fiduciary for Spindle and by engaging in acts designed to injure his agency relationship with Spindle.
264. W. Clark failed to use reasonable efforts to give Spindle information which was relevant to the affairs entrusted to him.
265. As a result of W. Clark's breaches of his duty of loyalty, Spindle has sustained damages in an amount to be ascertained at trial.

THIRTIETH CLAIM FOR RELIEF
(Breach of Duty of Loyalty – Against J. Clark)
266. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.
267. J. Clark was Spindle's agent.
268. J. Clark breached his agency obligations by not acting as a fiduciary for Spindle and by engaging in acts designed to injure his agency relationship with Spindle.
269. J. Clark failed to use reasonable efforts to give Spindle information which was relevant to the affairs entrusted to him.
270. As a result of J. Clark's breaches of his duty of loyalty, Spindle has sustained damages in an amount to be ascertained at trial.

THIRTY-FIRST CLAIM FOR RELIEF
(Breach of Duty of Loyalty – Against Tate)
271. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.
272. Tate was Spindle's agent.
273. Tate breached his agency obligations by not acting as a fiduciary of Spindle and by engaging in acts designed to injure his agency relationship with Spindle.
274. Tate failed to use reasonable efforts to give Spindle information which was relevant to the affairs entrusted to him.
275. As a result of Tate's breaches of his duty of loyalty, Spindle has sustained damages in an amount to be ascertained at trial.

THIRTY-SECOND CLAIM FOR RELIEF
(Conversion – Against All Defendants)
276. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.
277. Defendants committed a distinct act of dominion wrongfully exerted over Spindle's personal property.
278. The act was in denial of, or inconsistent with, Spindle's title or rights therein; or the act was in derogation, exclusion or defiance of Spindle's title or rights in the personal property.
279. As a result of Defendants' conversion, Spindle has sustained damages in an amount to be ascertained at trial.

THIRTY-THIRD CLAIM FOR RELIEF
(Breach of the Implied Covenant of Good Faith and Fair Dealing – Against W. Clark)
280. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.
281. Spindle and W. Clark were parties to a contract.
282. W. Clark owed a duty of good faith to Spindle, as every contract in Arizona contains an implied covenant of good faith and fair dealing.
283. W. Clark breached that duty by performing in a manner that was unfaithful to the purpose of the contract.
284. As a result of W. Clark's breaches of the implied covenant of good faith and fair dealing, Spindle has sustained damages in an amount to be ascertained at trial.

THIRTY-FOURTH CLAIM FOR RELIEF
(Breach of the Implied Covenant of Good Faith and Fair Dealing – Against J. Clark)
285. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.
286. Spindle and J. Clark were parties to a contract.
287. J. Clark owed a duty of good faith to Spindle, as every contract in Arizona contains an implied covenant of good faith and fair dealing.
288. J. Clark breached that duty by performing in a manner that was unfaithful to the purpose of the contract.
289. As a result of J. Clark's breaches of the implied covenant of good faith and fair dealing, Spindle has sustained damages in an amount to be ascertained at trial.

THIRTY-FIFTH CLAIM FOR RELIEF
(Breach of the Implied Covenant of Good Faith and Fair Dealing
– Against Tate)
290. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.
291. Spindle and Tate were parties to a contract.
18. Tate owed a duty of good faith to Spindle, as every contract in Arizona contains an implied covenant of good faith and fair dealing.
292. Tate breached that duty by performing in a manner that was unfaithful to the purpose of the contract.
293. As a result of W. Clark's breaches of the implied covenant of good faith and fair dealing, Spindle has sustained damages in an amount to be ascertained at trial.

THIRTY-SIXTH CLAIM FOR RELIEF
(Securities Fraud – Against W. Clark)
294. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.
295. W. Clark made an untrue statement of a material fact or omitted a material fact necessary under the circumstances to keep the statements that were made from being misleading in connection with the purchase of securities.
296. W. Clark acted knowingly.
297. W. Clark used an instrumentality of interstate commerce in connection with the purchase of securities, regardless of whether the instrumentality was used to make an untrue statement or a material omission.
298. Spindle justifiably relied on W. Clark's untrue statements of material fact or omissions of material fact.
299. As a result, W. Clark caused Spindle to sustain damages in an amount to be ascertained at trial.

THIRTY-SEVENTH CLAIM FOR RELIEF
(Insider Trading – Against W. Clark)
300. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.
301. W. Clark used an instrumentality of interstate commerce in connection with the purchase of securities.
19. W. Clark used a device, scheme or artifice to defraud Spindle in connection with the purchase of a security.
302. W. Clark acted knowingly or with severe recklessness.
303. Spindle's sale of its restricted common stock was contemporaneous with W. Clark's insider trading.
304. As a result of W. Clark's insider trading, Spindle sustained damages in an amount to be ascertained at trial.

THIRTY EIGHTH CLAIM FOR RELIEF
(Violation of Federal Computer Fraud and Abuse Act
– Against All Defendants)
305. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.
306. Defendants violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C), by intentionally accessing a computer used for interstate commerce or communication, without authorization or by exceeding authorized access to such a computer, and by obtaining information from such a protected computer.

307. Defendants violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4) by knowingly, and with intent to defraud Spindle, accessing a protected computer, without authorization or by exceeding authorized access to such a computer, and by means of such conduct furthered the intended fraud and obtained one or more things of value.

308. Defendants violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(A)(i) by knowingly causing the transmission of a program, information, code, or command and as a result intentionally causing damage without authorization to a protected computer owned by Spindle.

309. Defendants violated the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030(a)(5)(A)(ii) & (iii) by intentionally accessing a protected computer without authorization, causing damage to Spindle, recklessly or without due regard for their actions.

310. The computer system or systems that Defendants accessed as described above constitute a "protected computer" within the meaning of 18 U.S.C. § 1030(e)(2).

311. Spindle suffered damage and loss by reason of these violations, including, without limitation, harm to Spindle's data, programs, and computer systems and other losses and damage in an amount to be proved at trial, but, in any event, in an amount in excess of $75,000 aggregated over a one-year period.

312. Defendants' unlawful access to and theft from Spindle's computers also have caused Spindle irreparable injury. Unless restrained and enjoined, Defendants will continue to commit such acts. Spindle's remedy at law is not adequate to compensate it for these inflicted and threatened injuries, entitling Spindle to remedies including injunctive relief as provided by 18 U.S.C. § 1030(g).

THIRTY-NINTH CLAIM FOR RELIEF
(Aiding and Abetting – Against All Defendants)

313. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.

314. Defendants had full knowledge, or should have reasonably known, of the true nature of the wrongful conduct of each other Defendant, and aided and abetted such wrongful conduct, including misappropriation of Spindle's trade secrets and confidential information and other unfair business practices, by providing substantial assistance and/or encouraging the others to act.

315. Defendants also aided and abetted the described wrongful conduct of the other Defendants by giving substantial assistance and/or encouragement that, separately considered, was wrongful in and of itself.

316. As a direct and proximate result of the aiding and abetting of these acts, Spindle suffered injury, damage, loss, and harm. The wrongful conduct aided and abetted by the Defendants was a substantial factor in causing this harm.

317. Defendants' aiding and abetting of these wrongful acts was willful, malicious, oppressive, and in conscious disregard of Spindle's rights, and Spindle is therefore entitled to an award of punitive damages to punish Defendants' wrongful conduct and deter future wrongful conduct.

318. As result of Defendants' aiding and abetting of these wrongful acts, Spindle sustained damages in an amount to be ascertained at trial.

FORTIETH CLAIM FOR RELIEF
(Rescission – Against All Defendants)

319. Spindle hereby incorporates by reference and restates paragraphs 1 through 107 as if fully set forth herein.

320. Upon information and belief, beginning on or about December 1, 2014, and continuing through in or about June 2016, W. Clark, J. Clark, and Tate

1    breached their contractual obligations and fiduciary duties to Spindle by failing
     to perform their duties as Spindle officers and employees.

2    321. As a result of these breaches, W. Clark, J. Clark, and Tate wrongfully
     demanded and received Spindle stock as compensation for their supposed

3    services to Spindle.

     322. Spindle is entitled to rescission and cancellation of the stock provided to
4    W. Clark, J. Clark, and Tate, including but not limited to the shares that were
     putatively transferred to defendant Phasive as alleged in paragraph 107 of this

5    First Amended Complaint.

6    PUNITIVE DAMAGES ALLEGATIONS

     323. Defendants have acted willfully and maliciously and with an evil hand
7    guided by an evil mind thereby justifying an award of punitive damages on
     those claims that permit such an award in an amount sufficient to punish

8    Defendants and to deter others from engaging in similar misconduct.

9        On January 13, 2017, Defendants filed their First Amended Answer to the FAC and

10   Second Amended Counterclaim (Doc. 45). In their Second Amended Counterclaim,

11   Defendants allege 11 counterclaims against Plaintiff.

12                                    **DISCUSSION**

13       In their Motion for Partial Judgment on the Pleadings, Defendants request that the

14   Court dismiss Counts 1, 7-10, 27, 28, 32, 33 and 36-40 of the FAC, asserting that these

15   counts fail to state a claim upon which relief can be granted.

16   **STANDARD OF REVIEW**

17       The Federal Rules of Civil Procedure require a "short and plain statement of the claim

18   showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); Gilligan v. Jamco Dev.

19   Corp., 108 F.3d 246, 248-49 (9th Cir. 1997). Thus, dismissal for insufficiency of a complaint

20   is proper if the complaint fails to state a claim on its face. See Lucas v. Bechtel Corp., 633

21   F.2d 757, 759 (9th Cir. 1980). Under Rule 12(c), a party may move for judgment on the

22   pleadings after the pleadings are closed. The analysis under a 12(c) motion is identical to

23   that of a Rule 12(b)(6) motion; the court must determine whether the facts alleged in the

24   complaint, if true, entitle the plaintiff to prevail. Chavez v. United States, 683 F.3d 1102,

25   1108 (9th Cir. 2012). A Rule 12(b)(6) dismissal for failure to state a claim can be based on

26   either: (1) the lack of a cognizable legal theory; or (2) insufficient facts to support a

27   cognizable legal claim. See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir.

28   1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

1   In determining whether an asserted claim can be sustained, all allegations of material
2   fact are taken as true and construed in the light most favorable to the non-moving party.  See
3   Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9ᵗʰ Cir. 1994).  As for the factual
4   allegations, the Supreme Court has explained that they "must be enough to raise a right to
5   relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).
6   Indeed, to survive a motion to dismiss, the plaintiff's complaint must contain more than "an
7   unadorned, the-defendant-unlawfully-harmed me accusation."  Ashcroft v. Iqbal, 556 U.S.
8   662, 678 (2009) (citing Twombly, 550 U.S. 555).  "Threadbare recitals of the elements of a
9   cause of action, supported by mere conclusory statements, do not suffice."  Id.  Plaintiff must
10   plead factual content "that allows the court to draw the reasonable inference that the
11   defendant is liable for the misconduct alleged."  Id.

12   **ANALYSIS**

13   **I.    Count 38**

14   In Count 38, Plaintiff asserts that Defendants violated the Computer Fraud & Abuse
15   Act ("CFAA"), 18 U.S.C. § 1030, by, among other things, accessing a protected computer
16   with intent to defraud Plaintiff and engaging in conduct furthering the intended fraud. (FAC
17   ¶¶ 305-12.) Defendants argue that, because this claim is grounded in fraud, Plaintiff has
18   failed to satisfy the heightened pleading requirements of Rule 9(b), namely the "who, what,
19   when, where, and how" of the alleged fraudulent conduct.[1]  Defendants state that paragraphs
20   305-312 of the FAC contain only formulaic recitals of the elements of the CFAA claim,
21   which do not satisfy Rule 8 pleading requirements, much less Rule 9(b)'s heightened
22   requirements.

23   Further, Defendants argue that the CFAA "is not a misuse or misappropriation statute
24   - it is a computer hacking statute," and thus requires that access to a computer be
25   unauthorized.  Thus, Plaintiff's allegations that Defendants accessed work computers while
26   employed by Plaintiff (and thus were authorized to access them), and removed work

27

28   [1]In alleging fraud or a mistake, a party must state with particularity the circumstances
constituting fraud or mistake.  Fed.R.Civ.P. 9(b).

computers when they were terminated, are not sufficient to satisfy the requirements of the statute.

Rule 9(b) clearly requires a party alleging fraud to "state with particularity" the circumstances constituting fraud.  Plaintiff asserts that a claim under the CFAA, however, does not have to meet the heightened pleading standards, and cites several California district court cases in support of this position.  If the heightened pleading standard applies, the Court finds that Plaintiff has not met the standard.  Plaintiff alleges generally that Defendants intentionally accessed Plaintiff's computer(s), in furtherance of fraud, and caused harm to Plaintiff.  Other than specifying that computers were "wiped clean," Plaintiff alleges that another computer, that purportedly contained Plaintiff's proprietary information, was removed from the premises after Defendant J. Clark's employment was terminated.  (FAC ¶ 99.)  Plaintiff does not alleged that any computer taken was later accessed and, if so what proprietary information was taken during the unauthorized access, or how it was used to perpetuate the fraud.  Plaintiff also does not allege specific damage from the purported unauthorized access.

Even under Rule 8(a) pleading standards, Plaintiff's claim under the CFAA fails. Plaintiff does not dispute that the CFAA is meant to penalize unauthorized access to protected computers, and not misuse or misappropriation. Yet, Plaintiff does not allege in its FAC that Defendants did not have authorized access to the information obtained from Plaintiff's computers, or that they did not have access when the computers were wiped clean. The Ninth Circuit Court of Appeals has drawn a clear distinction between unauthorized access (that violates the CFAA) and unauthorized use of the information obtained through authorized access (that does not violate the CFAA).  See United States v. Nosal, 676 F.3d 854, 858-59 (9th Cir. 2012); LVRC Holdings v. Bekka, 581 F.3d 1127, 1133 (9th Cir. 2009). "The government's interpretation would transform the CFAA from an anit-hacking statute into an expansive misappropriation statute."  Nosal, at 857.  In Bekka, the Court granted summary judgment on a CFAA claim because the only evidence of access occurred during the defendant's employment.

The CFAA was enacted in 1984 to enhance the government's ability to prosecute computer crimes. The act was originally designed to target hackers who accessed computers to steal information or to disrupt or destroy computer functionality, as well as criminals who possessed the capacity to "access and control high technology processes vital to our everyday lives..." H.R. Rep. 98-894, 1984 U.S.C.C.A.N. 3689, 3694 (July 24, 1984). Bekka, 581 F.3d 1130-31.

"No language in the CFAA supports [the] argument that authorization to use a computer ceases when an employee resolves to use the computer contrary to the employer's interest." Bekka, at 1133. (rejecting 7th Circuit holding that authorization ceases when an employee breaches a duty of loyalty to his employer). Accord, United States v. Christensen, 828 F.3d 763, 787 (9th Cir. 2015)(Congress has created other statutes under which a government employee who abuses his database access privileges may be punished, but it did not intend to expand the scope of the federal anti-hacking statute.).

Plaintiff's argument that Defendants' access became unauthorized when they exceeded their authorization by wiping the computers clean or removing and refusing to return a computer is not persuasive. By that argument, any employee who deletes computer information from a computer while employed, or who removes an employer's computer would be violating the CFAA. Furthermore, even if Plaintiff were to have sufficiently pled unauthorized access, its assertion that upon "information and belief," Defendants wiped the data off the work computers to commit fraud (FAC ¶ 102), is conclusory and does not suffice to state a claim of conversion. The Court will order Count 38 of the FAC dismissed.

## II.    Counts 36-37

In Counts 36 and 37, Plaintiff asserts claims against W. Clark for securities fraud and insider trading, respectively. Defendants state that both claims fail because Plaintiff does not have standing to bring them. To have standing to assert a securities fraud claim, a plaintiff must have purchased or sold the securities at issue in reliance on the alleged fraudulent misrepresentations or omissions – Defendants assert that Plaintiff has not alleged that it purchased or sold stock in reliance of misrepresentations. Moreover, Plaintiff has failed to

plead several elements of these claims with sufficient particularity to meet the requirements of Rule 9(b) and the Private Security Litigation Reform Act ("PLSRA"), 15 U.S.C. § 78u-4. Lastly, Defendants state that a plaintiff cannot state a cause of action for insider trading unless the plaintiff pleads a predicate violation of the securities laws – which Defendants claim that Plaintiff has failed to do.

To meet Rule 9(b) pleading standards, whether alleging securities fraud or insider trading, "the complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993). To make a claim of insider trading, "contemporaneous trading is necessarily a 'circumstance constituting fraud' . . . [that] must be pleaded with particularity under Rule 9(b)." Neubronner F.3d at 670. A plaintiff must plead with particularity, among other things, identification of the person who traded and what material non-public information he had. Newby v. Enron Corp., 610 F.Supp. 2d 600, 651 (S.D. Tex. 2009).

To have standing to assert a securities fraud claim a plaintiff corporate issuer must have purchased or sold the securities at issue in reliance on the alleged fraudulent misrepresentation or omissions. See Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 731 (1975). Nowhere in Plaintiff's FAC does it allege that Spindle Corporation at any specific time, purchased or sold specific securities, in reliance on Defendants' fraudulent misrepresentations or omissions. Upon review of the factual allegations in the FAC pertaining to securities fraud and insider trading, Plaintiff asserts that Defendant W. Clark made misrepresentations to the Board of Directors of Spindle Corporation, and to the investors as follows in pertinent part:

> 59. W. Clark represented affirmatively that Spindle would begin to generate revenue by January 2016. In fact, W. Clark knew or should have known otherwise.

> 60. W. Clark represented that Yowza!! had approximately two million users, when in fact at the time of acquisition Yowza!! had fewer than five thousand active users.

> 62. W. Clark, in 2015 and 2016 misrepresented the nature and quality of Catalyst's referral contracts.

63.  W. Clark misrepresented that Spindle would generated more than $122,000 per month in revenue in the coming months, when he knew or was grossly negligent in not knowing that this projection was inaccurate.

64.  W. Clark misrepresented that many of the merchants being on-boarded would become recurring customers, while knowingly (or with gross negligence) omitting to state that due to the high risk profile of certain customers, ricing sensitivity, and a lack of ability to properly service customers, there could be severe revenue fluctuation and a possible loss of the associated revenue in its entirety.

66.  W. Clark misrepresented the number and quality of merchants being on-boarded onto Yowza!!.

67.  W. Clark misrepresented the number and quality of additional sales opportunities available to Spindle in 2016, when W. Clark knew or should have known that it would be impossible for Spindle even to come close to that revenue number.

68.  Because of W. Clark's misrepresentations and failure to meet projections, he lost credibility with shareholders and caused the material dilution of Spindle's stock.

69.  Upon information and belief, in December 2015, W. Clark purposefully manipulated Spindle's stock price by encouraging a third-party to sell his stock, thereby depressing the price of Spindle stock, and then converted debt owed to him by Spindle into shares of stock at the artificially depressed price.

72.  W. Clark duped Spindle into issuing stock to him in that Spindle would not have issued the stock if it had received reasonable projections.

73.  W. Clark caused 2,957,694 shares of stock to be issued to him when he knew or was grossly negligent in not knowing that he possessed material non-public information about Spindle and omitted to disclose material facts about Spindle, including to the Board of Directors, such that had the information been known, then Spindle would not have issued the stock.

107.  In June 2016, W. Clark caused an unauthorized transfer of 500,000 shares of common stock to himself, and in September, 2016, caused an unauthorized transfer of 3,749,694 shares of common stock to Phasive, purportedly for a purchase, when at the time W. Clark knew, was grossly negligent in not knowing or was reckless in not knowing that W. Clark directly caused the original issuance of all such shares based upon a deceit that he perpetuated upon Spindle Corporation and its shareholders.

(FAC ¶¶ 59-73, 107)

To establish a private securities fraud claim, "a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 157 (2008)  As to the scienter

element, a plaintiff must allege sufficient facts to raise a "strong inference that the defendant acted with an intent to deceive, manipulate or defraud." Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F. 3d 1049, 1061 (9th Cir. 2008).

Plaintiff here fails to adequately plead standing, as there is no assertion that Plaintiff bought or sold securities on any given date relating to W. Clark's representations. Plaintiff only asserts that Spindle Corporation issued stock to W. Clark. Assuming for arguments sake that the issuance of stock to W. Clark qualifies as a sale or purchase, Plaintiff does not plead adequate scienter. In several paragraphs, Plaintiff alleges in the alternative that W. Clark was "grossly negligent," or was "reckless in not knowing" that the issuance of shares was based upon deceit. And, with respect to the "deceit," Plaintiff at times asserts that W. Clark make projections when he "should have know" otherwise, and in some instances, asserts that W. Clark misrepresented information, but does not identify how the information was inaccurate. Plaintiff also does not allege that the issuance of stock was directly related to any specific misrepresentation or omission by W. Clark, other than to allege generally that "W. Clark knew or was grossly negligent in not knowing that he possessed material non-public information, . . . and omitted to disclose material facts about Spindle." (FAC ¶ 73.) These broad factual assertions do support a reasonable inference that Defendant W. Clark is liable for securities fraud.

Finally, Plaintiff does not specifically identify what economic loss it sustained from the "fraud," other than to assert that at some unidentified point in time, there was a material dilution of the stock value. See New York City Employees Ret. Sys. v. Jobs, 593 F.3d 1018, 1023-24 (9th Cir. 2010), overruled on other grounds by Lacey v. Maricopa Cty., 693 F.3d 896 (9th Cir. 2012) ("economic loss does not necessarily accompany dilution, so such conclusory assertions of loss are not sufficient" to meet loss causation requirements).

As Plaintiff does not adequately plead a cause of action for security fraud, its insider trading claim fails. See Teamsters Local 617 Pension & Welfare Funds v. Apollo Group Inc., 633 F. Supp. 2d 763, 825 (D. Ariz. 2009) (modified on other grounds in Teamsters Local 617 Pension and Welfare Funds v. Apollo Group Inc., 690 F.Supp.2d 959 (D. Ariz.

2010)).  Irrespective of that finding, Plaintiff fails to plead with particularity what "insider information" Defendant W. Clark used in the "trading" of stock.  Plaintiff only alleges that "upon information and belief" W. Clark "purposefully manipulated Spindle's stock price by encouraging a third-party to sell his stock, thereby depressing the price, . . . thereafter W. Clark converted debt owned to him into shares of Spindle stock." (FAC ¶ 69.)  Plaintiff fails to adequately plead securities fraud and insider trading and the Court will order FAC Counts 36-37 dismissed.

### III.    Counts 1 and 33

In Counts 1 and 33, Plaintiff asserts breach of contract claims against W. Clark based on his February 2011 employment agreement. Defendants assert that those counts fail to state a claim because (1) Plaintiff was not a party to that employment agreement; and (2) in any event, the June 2016 Transition Agreement between Plaintiff and W. Clark expressly superseded any prior agreements between the parties. In its response, Plaintiff points only to its allegation that Plaintiff is the successor-in-interest to RhinoPay, Inc.: "[o]n or about February 1, 2011, Plaintiff (through its predecessor-in-interest RhinoPay, Inc.) and W. Clark entered into a contract defining their employment relationship."  (FAC ¶ 16.)

The language of the 2011 employment agreement expressly reads that "[n]either party shall assign or transfer its rights, or delegate its obligations under the Agreement to a third party without prior written approval of the other party; provided however, that (i) the Company [RhinoPay Inc.] may assign this Agreement to an affiliate, a subsidiary or a parent company (i.e., a company that owns more than fifty percent (50%) equity interest in the Company) without the prior approval of (oral or written) of Executive [W. Clark])." (Doc. 24-1, ¶ 13.)  Plaintiff asserts that Plaintiff is successor-in-interest to RhinoPay, Inc.:  "[o]n or about February 1, 2011, Spindle (through its predecessor-in-interest RhinoPay, Inc.) entered into a contract defining their employment relationship." (FAC ¶ 16.) Plaintiff argues therefore that prior approval from Defendant W. Clark was not required for the assignment of the agreement.  Plaintiff, however, fails to allege that a "successor-in-interest" entity qualifies as an "affiliate," a "subsidiary" or a "parent company" under the 2011 employment

1    contract.  Thus, any breach of employment contract based upon the 2011 employment

2    agreement between Plaintiff and W. Clark fails as insufficiently plead in the FAC.  The Court

3    will order FAC Counts 1 and 33 dismissed as they relate to a violation of the 2011

4    employment contract.

5        **IV.    Count 40**

6        In its FAC, Plaintiff added Count 40, seeking rescission and cancellation of stock

7    grants based on Defendants' alleged breaches of their employment contracts and fiduciary

8    duties arising from the employment relationships.  (FAC ¶¶ 320-322.) In support of its claim,

9    Plaintiff alleges that Defendants received the stock as compensation for services they

10   provided from December 2014 to June 2016. (FAC ¶¶ 70-72, 321.) With respect to W. Clark,

11   Plaintiff further alleges that some of the shares were paid to him as compensation under the

12   June 2016 Transition Agreement. (See FAC ¶¶ 88, 321.) Plaintiff asserts that because

13   Defendants allegedly failed to perform their obligations to the company, Plaintiff is entitled

14   to rescind the employment contracts under which the shares were granted, resulting in a

15   cancellation of the share certificates.

16       Defendants contend that such a claim, however, is barred by Plaintiff's previous

17   election of remedies in seeking damages based on Defendants' breach of the employment

18   contracts. (FAC, Counts 1-3.) Further, to the extent the rescission claim seeks cancellation

19   of the shares granted to W. Clark, such claim is barred because, as admitted in the FAC, the

20   shares were previously transferred from W. Clark to a third-party, Phasive, Inc. (FAC ¶¶ 107,

21   322.) In response, Plaintiff contends that it is entitled to plead alternative theories of relief

22   without making its election of remedies until trial; therefore, it is premature to dismiss

23   Plaintiff's rescission claim.

24       The Court finds persuasive Plaintiff's argument that it may pursue alternative

25   remedies in its FAC.  See, West Pinal Family Health Center, Inc. v. McBryde, 162 Ariz. 546,

26   548, 785 P.2d 66, 68 (Ariz. App. Ct. 1989); IMA North America, Inc. v. Marlyn

27   Nutraceuticals, Inc., 2008 WL 312090 *5 (D. Ariz. 2008) (party suing under breach of

28   contract may seek alternative relief of rescission or compel performance and "may wait until

trial before electing the remedy to pursue.") The cases cited by Defendants, although seemingly inapposite are factually distinguishable. See Hubbard v. Superior Court, 111 Ariz. 585, 535 P. 2d 1302 (1975), overruled in part on other grounds, Medassys Acquisition Corp. v. SDMS, PC, 203 Ariz. 420, 55 P.3d 763 (2002) (court held that party could seek rescission of fraudulently induced title transfer and, at the same time, punitive damages); Landin v. Ford, 151 Ariz. 278, 727 P.2d 331 (1986) (Plaintiff was allowed to seek rescission against landholder for fraudulent title transfer, and, at the same time, claim a breach of contract claim against separate defendant Title Company); Jennings v. Lee, 105 Ariz. 167, 461 P.2d 161 (1969) (one who is fraudulently induced to enter contract must elect remedies - here, Plaintiff does not allege that it was fraudulently induced to enter into the employment contracts).

Defendants also argue that, to the extent count 40 of the FAC seeks the return of stock shares that W. Clark transferred to Phasive, Inc., it fails as the equitable remedy of rescission does not apply when property has been transferred to a third-party. Although, as a general principle, this is true, a party may nonetheless substitute rescissory damages when it is impossible to recover. See Standard Chtd. PLC v. Waterhouse, 190 Ariz. 6, 34, 945 P.2d 317, 345 (Ariz. App. 1996). Additionally, Plaintiff alleges that Defendant Phasive Inc., was incorporated by Defendants W. and J. Clark in Arizona, and thus is their "alter-ego," thus raising a question of fact whether or not rescission would be impossible or infeasible. The Court will deny Defendants' motion to dismiss Count 40 of the FAC.

## V.    Counts 7-10 and 32

In Counts 7-10, Plaintiff asserts separate claims of unfair competition against each Defendant, incorporating FAC paragraphs 1 through 107, and alleges specifically as follows:

> 137. Spindle invested substantial time, skill and money in developing its property, including but not limited to, its intellectual property, trade secrets, marketing strategy, business goodwill, employees, customers, and investors.
>
> 138. W. Clark misappropriated and used Spindle's property at little or no cost.
>
> 139. W. Clark's misappropriation and use of Spindle's property was without Spindle's authorization or consent.
>
> 140. W. Clark's misconduct described above constitutes unfair competition under Arizona law.

1       The claims purport to be based on the alleged misappropriation of Plaintiff's trade

2   secrets. "In Arizona, the common law doctrine of unfair competition 'encompasses several

3   tort theories, such as trademark infringement, false advertising, 'palming off,' and

4   misappropriation.'" See Joshua David Mellberg LLC v. Will, 96 F. Supp. 3d 953, 963 (D.

5   Ariz. 2015) (citing Fairway Constructors, Inc. v. Ahern, 193 Ariz. 122, 124, 970 P.2d 954,

6   956 (App. 1998)). Defendants state that none of the FAC allegations touch on any of these

7   theories except the claim that Defendants misappropriated Plaintiff's trade secrets. As such,

8   Defendants claim that Plaintiff's unfair competition and conversion claims are preempted by

9   Arizona's Uniform Trade Secret Act ["AUTSA"]. See A.R.S. § 44-407(A).

10       Plaintiff concedes that the AUTSA preempts any unfair competition claim based upon

11   the tort theory of misappropriation of trade secrets. Plaintiff maintains, however, that it

12   alleges other bad conduct in its FAC that would form the basis of an unfair competition

13   claim. The AUTSA specifically provides that its preemption provision does not affect

14   "[o]ther civil remedies that are not based on misappropriation of a trade secret." A.R.S. §

15   44-407(B)(2). Under the AUTSA, a trade secret is defined as "information . . . that both: (a)

16   [d]erives independent economic value . . . from not being generally known to, and not being

17   readily ascertainable by proper means by, other persons who can obtain economic value from

18   its disclosure or use," and "(b) [i]s the subject of efforts that are reasonable under the

19   circumstances to maintain its secrecy". A.R.S. § 44-401(4). Plaintiff alleges in its unfair

20   competition claims that Defendants misappropriated and without consent used its property,

21   to wit; intellectual property, trade secrets, marketing strategy, business goodwill, employees,

22   customers, and investors. (FAC, Counts 7-10.) Plaintiff also charges Defendants with

23   developing a competing business while still employed with Plaintiff, wiping data off of

24   Plaintiff's company computer to conceal this fact, causing at least one major client of

25   Plaintiff to substantially reduce its transactions with Plaintiff, and actively soliciting

26   Plaintiff's clients and investors for their competing business. (FAC ¶¶ 102, 104-106.)

27       The Court finds that Plaintiff's claims of unfair competition based upon a

28   misappropriation of trade secrets is preempted by the AUTSA, and will order any reference

to trade secrets dismissed from the FAC. With respect to the other claimed misappropriation, the Court can not determine at this stage whether or not trade secrets are involved. "Misappropriation involves the unfair taking for profit, at little or no cost, of property acquired by another through investment of substantial time and money." Fairway Constructors Inc, 193 Ariz. at 124, 970 P.2d at 957 (internal citations omitted). Plaintiff alleges the misappropriation of intellectual property, marketing strategy, goodwill, employees, customers and investors. The Court finds that Plaintiff has sufficiently alleged unfair competition based upon these other forms of misappropriation. This decision is without prejudice to a later determination that other property Plaintiff asserts was misappropriated constitutes a trade secret.

In Count 32, Plaintiff asserts a claim of conversion against all Defendants, incorporating FAC paragraphs 1 through 107, and alleges specifically as follows:

277. Defendants committed a distinct act of dominion wrongfully exerted over Spindle's personal property.

278. The act was in denial of, or inconsistent with, Spindle's title or rights therein; or the act was in derogation, exclusion or defiance of Spindle's title or rights in the personal property.

The Court finds that Plaintiff does not allege sufficient factual detail to render the claims plausible. Plaintiff does not define "personal property" or sufficiently allege how any property that could be considered personal property was converted. The Court will order Count 32 of the FAC dismissed.

## VI.    Counts 27, 28, and 39

In Counts 27, 28, and 39, Plaintiff purports to assert independent causes of action against all Defendants for conspiracy, concerted action, and aiding and abetting. Under each count, Plaintiff asserts that the mere conduct of acting together with an objective to cause harm is sufficient to create liability. (FAC ¶¶ 251-254, 256-260, 314-318.) Defendants assert that such claims simply do not exist as an independent cause of action under Arizona law.

Conspiracy, concerted action and aiding and abetting do not exist as independent causes of action under Arizona law, although there is an action for damages caused by acts committed pursuant to joint action. See Estate of Hernandez v. Flavio, 187 Ariz. 506, 510,

930 P.2d 1309, 1313 (1997); <u>Ramirez v. Chavez</u>, 71 Ariz. 239, 243, 226 P.2d 143, 146 (1951).  Plaintiff also fails to respond directly to Defendants' argument, and fails to cite contrary authority.  As such, the Court, the Court will dismiss Counts 27, 28, and 39 from the FAC.

## CONCLUSION

The Court will grant Defendants' Motion for Partial Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Doc. 35), IN PART, and will order the dismissal of Counts 38, 36-37, Count 1 and 33 as they relate to the 2011 Employment Contract, Counts 7-10 as they relate to misappropriation of trade secrets, Count 32, Counts 27, 28 and 39.  The Court denies Defendants' request to dismiss Count 40.  Plaintiff, in its Response, request leave to amend.  (Doc. 39 at 15.)

Rule 15(a) provides, in pertinent part:

A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. ...  In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires. Fed.R.Civ.P. 15(a).

Although the decision whether to grant or deny a motion to amend is within the trial court's discretion, "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).  "In exercising its discretion with regard to the amendment of pleadings, 'a court must be guided by the underlying purpose of Rule 15 – to facilitate decision on the merits rather than on the pleadings or technicalities.' ... Thus, 'Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality.'" <u>Eldridge v. Block</u>, 832 F.2d 1132, 1135 (9th Cir. 1987) (citations omitted).  "Generally, this determination should be performed with all inferences in favor of granting the motion." <u>Griggs v. Pace Am. Grp.</u>,

1
2
170 F.3d 877, 880 (9th Cir. 1999) (citing <u>DCD Programs, Ltd. v. Leighton</u>, 833 F.2d 183, 186 (9th Cir. 1987)).

3
4
5
6
7
8
9
After the defendant files a responsive pleading, however, leave to amend may be denied if the "amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay."  <u>Madeja v. Olympic Packers, L.L.C.</u>, 310 F.3d 628, 636 (9th Cir. 2002) (quoting <u>Yakama Indian Nation v. Wash. Dep't of Revenue</u>, 176 F.3d 1241, 1246 (9th Cir. 1999)).  "The party opposing amendment bears the burden of showing prejudice," futility, or one of the other permissible reasons for denying a motion to amend.  <u>DCD Programs</u>, 833 F.2d at 187.

10
11
12
13
14
15
Plaintiff filed its original Complaint on August 2, 2016, and filed its First Amended Complaint on October 19, 2016.  (Docs. 1, 24.)  The Court addressed with Plaintiff during oral argument on the motion the likelihood of curing any alleged deficiency in its FAC by further amendment.  Considering the arguments made, and considering the various legal deficiencies found, the Court finds that further amendment would be futile, and in any event, would create undue delay.

16
Wherefore,

17
18
**IT IS ORDERED** granting, **in part**, Defendants' Motion for Partial Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Doc. 35).

19
20
21
22
**IT IS FURTHER ORDERED** dismissing from Plaintiff's First Amended Complaint (Doc. 24) Counts 38, 36-37, Count 1 and 33 as they relate to the 2011 Employment Contract, Counts 7-10 as they relate to misappropriation of trade secrets, Count 32, Counts 27, 28 and 39.

23
24
**IT IS FURTHER ORDERED** denying Defendants' request to dismiss Count 40 of Plaintiff's First Amended Complaint.

25
DATED this 22nd day of February, 2017.

26
27
28

_Michelle H. Burns_
Michelle H. Burns
United States Magistrate Judge